## SMITH et al. v. DUNNAM et al.
### No. 2760.

Court of Civil Appeals of Texas. Beaumont.
May 23, 1935.

Rehearing Denied June 12, 1935.

E. W. Love, of Cleveland, for appellants.

P. C. Matthews and Llewellyn & Dougharty, all of Liberty, for appellees.

WALKER, Chief Justice.

This was a partition suit by appellees, W. J. Dunnam and P. C. Matthews, against appellants, D. C. Smith and wife, and B. C. McClelland and wife, wherein appellees pleaded that they and appellants owned, as tenants in common, lot No. 12 and 10 feet off the north side of lot No. 11, block No. 5, in the town of Cleveland, Liberty county, holding the title one-fourth to each of the appellees and one-fourth to appellants Smith and wife, and one-fourth to appellants McClelland and wife. On trial to the court without a jury, judgment was entered partitioning the property as prayed for and ordering it sold, by the following conclusions of fact and law:

### "Findings of Fact.

"1. I find that the plaintiffs W. J. Dunnam and P. C. Matthews, together with the defendants D. C. Smith and wife, Mary Smith, and B. C. McClelland and wife, Florence McClelland, were at the time of the filing of this suit and are now the owners as tenants in common of the fee simple title to the property described in plaintiffs' original petition, being Lot No. 12 and 10 feet off of the North side of Lot No. 11 in Block 5 in the Town of Cleveland, Liberty County, Texas, said ownership being in the following proportions, to-wit: W. J. Dunnam, an undivided ¼ interest, P. C. Matthews, an undivided ¼ interest, D. C. Smith and wife, Mary Smith, jointly and in community, an undivided ¼ interest, B. C. McClelland and wife, Florence McClelland, jointly and in community, an undivided ¼ interest.

"2. I further find that there is located and situated upon the above described lot and parcel of land a one-story brick building which was constructed for and is being used as a garage building; said building being of the approximate dimensions of 50' X 100' and covering substantially all of the surface of the above described lot; and in this connection, I further find that by reason of the character of said building and the use to which it is adaptable partition of said property in kind between the co-owners in equal portions would be impossible.

"3. I find that said property, together with the improvements situated therein, is of the reasonable value of $8,000.00.

"4. I find that the plaintiffs W. J. Dunnam and P. C. Matthews failed to make proper demand for possession prior to suit, and are, therefore, not entitled to recover rentals sued for.

"5. I find that the interest of the plaintiff W. J. Dunnam in the property involved in this suit was acquired by purchase from C. R. Smith, a former partner with the defendants D. C. Smith and B. C. McClelland operating a garage business in the building located on said property; but I further find that the said W. J. Dunnam, by said purchase, acquired no interest in said business and is not, and has never been, a partner with the said D. C. Smith and B. C. McClelland.

### "Conclusions of Law.

"Based upon the foregoing findings of fact, I conclude that plaintiffs W. J. Dunnam and P. C. Matthews are entitled to decree of partition as prayed for and that, said lot not being susceptible of partition

in kind, the same should be sold and the net proceeds, after payment of all costs of suit incurred in this court, divided according to the interests set out in Finding of Fact No. 1, and that, to the end that said property be sold in accordance with the judgment of this court, plaintiffs are entitled to proper order of sale and writs necessary to effect such sale and give possession to the purchaser thereat. I further conclude that recovery of rentals up to date of Judgment should be denied.

"Thos. B. Coe, Judge."

Against this judgment appellants make the following contentions, which have support in their answers: First, W. J. Dunnam was improperly joined as plaintiff with P. C. Matthews; second, appellees' petition was subject to a general demurrer; third, P. C. Matthews was estopped to claim an interest in the property; fourth, the instrument under which Matthews claimed, though purporting to convey title, was in fact a mortgage; fifth, Matthews, in fact, owned no interest in the property; sixth, Dunnam's interest was not in this particular property but in a partnership that owned the property as part of the partnership assets; seventh, the evidence was insufficient to support the finding that Dunnam was not a partner; eighth, the evidence was insufficient to support Dunnam's plea of estoppel against appellants. These contentions are overruled.

■ Propositions 1, 2, 3, and 7 present the same point; that Dunnam owned an interest in the property only as a member of the partnership Cleveland Motor Company. The trial court decided this contention by the following fact conclusion: "I further find that the said W. J. Dunnam, by said purchase, acquired no interest in said business (referring to Cleveland Motor Company) and is not, and has never been, a partner with the said D. C. Smith and B. C. McClelland."

The deed through which Dunnam claimed the property was executed to him by C. R. Smith, who was a member of the partnership. This deed contained the following description:

"have Granted, Sold and Conveyed, and by these presents do Grant, Sell, and Convey, unto the said W. J. Dunnam, of the County of Liberty, State of Texas, all our undivided one-fourth (¼) undivided interest in and to those certain lots, tracts or parcels of land lying and being situated in Liberty County, Texas, to-wit:

"Lying and being situated in the County of Liberty and State of Texas, and being Lot No. 12, and 10 feet off of the North side of Lot No. 11, in Block 5, of the town of Cleveland, Liberty County, Texas, according to the original map and plat of said town of Cleveland together with all improvements thereupon situated."

The foregoing description is followed by the usual habendum clause. On this issue Dunnam testified as follows:

"Q. (Propounded by counsel, Mr. Dougharty) Now, when you bought him out you were buying his fourth interest in the land and building? A. Yes, sir, that was all.

"Q. You did not consider yourself in partnership? A. No, I knew that did not go with it.

"Q. You knew that did not go with it? A. Yes, sir.

"Q. You didn't buy any part of the tools and anything like that? A. No, sir.

"Q. You didn't buy any part of the stock of goods? A. No, sir.

"Q. You didn't become interested in the filling station business? A. You mean in the station?

"Q. In the sales? A. No.

"Q. You were to get no profit out of what they made, out of what they made in the business, all you were to get was the land and interest in the building? A. Yes, sir."

The petition did not allege that Dunnam's interest in the property was his interest in the partnership but the allegation of a fee ownership of one-fourth interest; nor was there any allegation that appellants owned their interests as members of the partnership; therefore, the petition was not subject to the general demurrer.

The evidence supported the allegations of the petition, not only as to the interests of Dunnam, but also as to that of appellants. On trial the parties made the following agreement:

"It is agreed by and between parties hereto, acting herein by their respective attorneys of record, that the following facts are true and that this stipulation may be incorporated in the statement of facts

in this cause, as if offered in evidence on the trial hereof:

"That on June 15th, 1931, D. C. Smith, B. C. McClelland and C. R. Smith, a partnership, operating under the firm name of Cleveland Motor Company, Cleveland, Texas, filed their voluntary petition in bankruptcy in Federal Court for the Eastern District of Texas, at Beaumont, Texas, together with their schedules, partnership and individual, of indebtedness and assets; that said petition was executed individually by each of said partners, and duly sworn to as required by law; that in the schedules of indebtedness filed with said petition, no claim was made by said partnership against C. R. Smith, individually, for any indebtedness due or claimed to be due by said C. R. Smith to said Cleveland Motor Company; that in the schedule of assets filed by said partnership, the said C. R. Smith's interest in the partnership, operating under the firm name of Cleveland Motor Company, was stated to be an undivided one-third interest, and nowhere in said schedules was said undivided one-third interest charged with, or stated to be liable for any individual indebtedness of the said C. R. Smith.

"That in said application and schedules, the said D. C. Smith, B. C. McClelland and C. R. Smith, claimed and asserted the exemption to the partnership, as such, and individually, the real property involved in this suit."

This property was, in fact, adjudged to appellants and C. R. Smith as their homestead. The bankruptcy proceedings dissolved the partnership. There was no evidence that this property subsequently became a part of the partnership assets. This statement from the record supports the court's conclusions that appellants owned their interest in the property as tenants in common with appellees, and not as members of the partnership.

That the instrument under which P. C. Matthews claimed his interest purported to convey a fee-simple title cannot be disputed, and no useful purpose would be served by quoting therefrom. The testimony supports the trial court's conclusion that this instrument was not a mortgage but was in fact a conveyance of title. D. C. Smith, after having testified in detail, as to the loan and deed of trust lien with the Farmers State Bank, testified as follows: "Well, I came from Cleveland over here and went to talk to Mr. Matthews then; so he told me to go back down there and see if I could not get Mr. Austin (who was President of the Farmers State Bank), to carry it along, 'pay him as much as you can.' Mr. Austin wouldn't take a partial payment. I said, 'Well, I got a brand new automobile down there, $1,085; I will just give you that.' Penny (meaning P. C. Matthews) comes over there; he, Mac and myself got in the car and drove down the road and left it standing at the garage. Penny said he would take it on a contingent basis, he says, 'one-fourth.' I says, 'all right, does it suit you, Mac?' Mac says, 'Yes.' We got through talking and came on back and called Sandy and told Sandy what Mac and I had agreed on. He said, 'okay.' And so now he was to take that and the one-fourth, but there was nothing said about that I should pay anything and he never asked me for anything, for anything at all."

On cross-examination by P. C. Matthews, D. C. Smith further testified as follows:

"Q. Delbert (meaning D. C. Smith) isn't it true that trade was made up there in that car on the highway? A. My and your part and Mac's part of the bargain was made right there.

"Q. Yes. A. You came back and you told Sandy what we had agreed on and asked him if it was satisfactory and he said yes and you proceeded right there.

The witness D. C. Smith further testified on cross-examination by P. C. Matthews, as follows:

"Q. The actual trade made with us was that I was to get a one-fourth interest in the building, contingent upon recovering in the suit, wasn't it, Delbert, and I gave you everything I had, didn't I, Son? A. I was satisfied.

"Q. Every time you called on me while in trouble I came up there, didn't I, and I saved the building for you, didn't I? A. Yes.

"Q. And just, Delbert, between man and man, are you willing to come in this Court today and say that I don't own a one-fourth interest in that building? A. You don't own three thousand dollars worth, according to the trade.

"Q. Will you say to this Court under oath, based on all that I did for you, right now, that I don't own a one-fourth interest in that building? A. I told you

that I deeded you a one-fourth interest in it.

"Q. Isn't it true that some two or three months ago you began to talk about Dunnam's interest and made statements to people that you wasn't questioning mine? A. I did that.

"Q. And yet today you are in this Court questioning it? A. No, I am questioning your right to go over there now and sell my stuff under the hammer."

C. R. Smith, called as a witness for appellants, on cross-examination by Mr. Dougharty, after having been shown his affidavit as to the ownership of the property involved in the suit, testified as follows:

"Q. Did you make that affidavit? A. Yes, sir.

"Q. Before Mr. Hubier? A. I believe it was Mr. Hubier.

"Q. Did Mr. Hubier swear you to that affidavit as shown by his jurat on this paper? Did you subscribe to it and swear to it before Mr. Hubier? A. Yes, sir.

"Q. And those were the facts then, is that what you say? A. Yes, sir.

"Q. That Mr. P. C. Matthews, D. C. Smith, C. R. Smith and B. C. McClelland owned that property in equal interest, is that right? A. Sure.

"Q. That is right. Then you do not dispute this affidavit? A. No, sir.

"Q. You say it is correct? A. I don't dispute giving or signing the deed to a one-fourth interest in it, either."

The appellee, P. C. Matthews, testifying on direct examination, in his own behalf, with reference to his employment by appellants and C. R. Smith in the suit against the Farmers State Bank, testified as follows:

"As to the statement made by, I believe Mr. D. C. Smith and Mr. C. R. Smith and Mr. John Smith—is that the name—Mr. John Smith, that I made a statement to them the day before I got the deed or before I got the deed that I would sell the property back to them as, if and when they got on their feet for the sum of a thousand or twelve hundred and fifty dollars, I will say that I did not make any such statement; further, that my secretary wasn't even with me on that trip; that I took the secretary back up there when I went to get the deed, put her out and turned her over to D. C. Smith

and went to the First National Bank where I had a conference over there that I had arranged before I left Liberty; I didn't talk with them when the deed was signed; the next time my secretary went with me up there was in June to prepare a schedule in this bankruptcy proceeding; and I further say that since—I am an attorney for myself, having that very question in the suit that I was representing them in, I would have been some lawyer to have turned around and have taken a lien myself on a business homestead.

"Mr. Dougharty: Let me ask you this question. You did testify this morning that sometime later—

"A. Yes, sir.

"Q. After the suit was concluded— A. I think there is where they all—I don't think that they are purposely trying to make me out a, I will say a falsifier in the matter; I think that that is where they all are confused; I was fussing about wanting to get some rent out of that building and try to get these taxes paid; that is when I told them I would take twelve hundred or a Thousand dollars and the purchaser assume the payment of the taxes, and that is where Sandy—I am sure he heard me say that, so they got me confused; I don't think I would have turned around and taken a lien on the building if I was filing a suit to set aside a lien. I have had these questions up too many times."

The record satisfactorily supports the conclusion that P. C. Matthews was not estopped to claim his interest. The evidence was to the effect that Matthews, while acting as attorney for appellants and C. R. Smith in a suit to cancel and set aside and hold for naught a deed of trust lien held by the Farmers State Bank, and while acting for them in the bankruptcy proceedings, did nothing to mislead appellants or prejudice their rights as applied to the real estate involved in this suit; but, to the contrary, the undisputed evidence was to the effect that his every act in the premises was for the benefit and protection of appellants' interests.

■ Appellants' answers in this case did not invoke the provisions of article 2010, Rev. Civ. Stat., providing that a denial of allegations of partnership shall be made under oath. There was no allegation that appellee W. J. Dunnam was a partner with appellants; the pleading with reference to that issue was nothing more than a

conclusion that Dunnam became a partner by reason of his purchase of the one-fourth interest of C. R. Smith. The facts, as developed, were to the effect that by reason of this purchase Dunnam did not become a partner.

The judgment of the lower court is in all things affirmed.

COMBS, J., did not sit.