Jerry CONOVER, Appellant,

v.

Abel A. JACKSON, Appellee.

No. 13–85–163–CV.

Court of Appeals of Texas,
Corpus Christi.

March 20, 1986.

Rehearing Denied May 15, 1986.

W. D. Seyfried, III, McAllen, for appellant.

Matias Morin, Jr., Edinburg, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Appellee, Abel A. Jackson, sued appellant, Jerry Conover, alleging that appellant had failed to pay him more than $50,000.00 due under a written agreement dissolving the partnership of the two men. Appellant Conover urged several affirmative defenses to this agreement at trial and asserted a counterclaim for money due, but the jury found favorably to plaintiff (appellee) on all issues.

Appellant challenges the factual sufficiency of the evidence to support the jury's findings on four special issues. He also challenges the actions of the trial court in refusing to submit an instruction to the jury on the date the partnership began and in refusing to grant him a new trial based on newly discovered evidence. We affirm.

By points of error one through four, appellant contends that the jury's findings on special issues four, six, eight, and ten are "contrary to the overwhelming weight of the evidence." These special issues submitted to the jury appellant's defensive theories that the partnership began in October 1979 rather than January 1, 1981 (issue four); that appellee made misrepresentations to appellant to induce him to sign the dissolution agreement (issue six); that appellee breached his fiduciary duty to appellant (issue eight); and that appellee wrongfully diverted partnership funds to his own use (issue ten).

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). Because appellant had the burden of proof on these fact issues at trial, appellant must frame his points of error to assert that the jury's findings are against the great weight and preponderance of the evidence. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Conrad v. Orellana*, 661 S.W.2d 309, 313 (Tex.App.—Corpus Christi 1983, no writ). We must then review all of the evidence to determine if the jury finding is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.*, 29 Tex.Sup.Ct.J. 204, 208 (February 15, 1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Houston Lighting & Power Co. v. Sue*, 644 S.W.2d 835, 840 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

The evidence at trial supports the disputed jury findings. In regard to the date on which the partnership began, the agreement dissolving the partnership itself recites January 1, 1981, as the beginning date. In addition, appellee and the partnership's accountant, David Davila, C.P.A., testified that the partnership began on January 1, 1981. Appellant, on the other hand, introduced evidence that the partnership existed since October 1979 through the testimony of Gary Toothaker, a bank officer. Toothaker testified that the parties opened an account in the name of Tiempo Testing & Lease Service using two thousand dol-

lars from a savings account of appellant's. He also made loans to that business in 1979 and 1980, with both Conover and Jackson signing notes on those loans. He was told it was a partnership by the two men. Mr. Toothaker later testified, though, that the relationship "was not a full-time venture on Jerry's (Conover's) part as I remember it, and later it became one." He "imagined" that somewhere around 1981 was the date it became a full partnership. Both appellant Conover and his accountant, Larry Rose, testified that the partnership began in October 1979. However, appellant did not sign a partnership tax return for 1979 or 1980.

To dispute the testimony favorable to appellant, appellee Jackson and accountant Davila testified that appellee was allowing appellant to begin buying into Tiempo by opening the bank account in 1979. The two thousand dollar deposit by appellant, according to appellee, was to help appellant build equity in the business. There was no evidence that appellant shared in profits before 1981 or that an agreement to share profits existed, although appellant claimed in this suit he was due some of the income of Tiempo for that period. Evidence that, prior to January 1, 1981, the parties had formed "an association of two or more persons to carry on as co-owners a business for profit" is seriously lacking. *See State v. Houston Lighting & Power Co.*, 609 S.W.2d 263, 267 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); TEX.REV. CIV.STAT.ANN. art. 6132b, § 6(1) (Vernon 1970).

■ Viewing all of the evidence on this issue as a whole, we cannot say that the jury's refusal to find that the partnership began in October 1979 was manifestly unjust. Competent evidence was given to support the contentions of both parties. It is the jury's province to determine the credibility of the witnesses and the weight to be given their testimony. *Leyva v. Pacheco*, 358 S.W.2d 547, 549 (Tex.1962); *Miles v. Royal Indemnity Co.*, 589 S.W.2d 725, 728 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

The jury also found, contrary to appellant's position, that appellee did not make false representations to appellant to induce appellant to sign the dissolution agreement; that appellee did not breach his fiduciary duty as a partner; and that he did not wrongfully divert partnership funds to his personal use.

During the existence of the partnership known as Tiempo Testing & Lease Service, there also operated out of the same office Jerry's Rental and Specialty Company, apparently solely owned by appellant, and G & A Oilfield Services, owned by appellee and his wife. The fact that the two contestants in this suit owned three businesses that operated in the same office space, all involved in the oilfield service industry, obviously created a good deal of difficulty for Tiempo's accountant, for the jury, and apparently for the parties themselves. Appellee testified at trial that Tiempo's employees were used to do work for both G & A and Jerry's Rental. However, both companies would send out invoices for their work in the name of either G & A or Jerry's Rental. Later, some sort of attempt to reimburse Tiempo for the use of Tiempo employees was made by G & A and Jerry's Rental. In the partnership dissolution agreement, the parties, with their accountants and the attorney who drafted the agreement, negotiated at length on how each partner was to either reimburse or be compensated by the partnership for the use of Tiempo employees in their separate businesses.

The Honorable Thomas P. Wingate, the attorney who drafted the partnership dissolution agreement, testified that he drew up several drafts of the agreement and that changes were made as the partners negotiated over terms. He also testified that both partners readily signed the final document after he went through the terms with them and gave them an opportunity to ask any questions. The final product, he stated, was the agreement between the two parties, reduced to writing. Accountant Davila, who was central to the negotiations between the parties, testified that changes

were made in the draft agreements as the amounts Davila calculated that appellant owed appellee were negotiated downward, from about $350,000 to about $124,000.

■ Appellant testified at trial that the reason he failed to pay the amounts due under the agreement, the original reason he was sued, was that his agreement to pay was at least partly subject to his future verification of the amount due by checking the partnership's financial records. Although the agreement gave appellant thirty days to verify the amount due, he apparently did no substantial checking before the institution of this suit, some nine months after the agreement was signed. However, in preparation for trial, appellant examined the partnership books and obtained invoices and bank records. He introduced much of these at trial, in an attempt to show that appellee was diverting funds. Almost all of the records introduced on this issue dealt with the use of Tiempo personnel by appellee's G & A Oilfield Service. It is undisputed that, while this interaction between G & A and Tiempo may not have been recorded on the partnership books, it was well-known to appellant and was made the subject of prolonged negotiations in the drafting of the dissolution agreement. Appellant freely signed the resulting agreement. Based on this evidence, we cannot say that the jury verdict clearly indicated bias or was manifestly unjust. *See Pool v. Ford Motor Co.,* 29 Tex.Sup.Ct.J. 204, 208 (February 15, 1986).

Appellant's fifth point of error complains of the trial court's refusal to instruct the jury that the partnership began in October of 1979. He contends that this fact was deemed admitted, since he alleged the October 1979 date in his Third Amended Original Counterclaim and appellee filed no verified denial as he says is required by TEX. R.CIV.P. 93(5)(Vernon Supp.1986).

■ This contention is without merit. Appellee's answer to appellant's counterclaim did not constitute a "denial of partnership" under Rule 93(5). Both parties agreed that a partnership existed; appellee

was only disputing the date *when* the partnership began. In fact, appellee himself, as plaintiff, based his cause of action on the assumption that he and appellant were partners. Rule 93 does not require a sworn denial of a disputed fact concerning an admitted partnership.

Our interpretation of Rule 93 has support under various decisions in which our appellate courts have refused to extend Rule 93 to an unreasonable breadth. For instance, *Vahlsing v. Collier Cobb & Associates,* 560 S.W.2d 117 (Tex.Civ.App.—Dallas 1977, no writ), held that, under the present Rule 93(8), the *genuineness* of an assignment was deemed admitted where a sworn denial was not filed, but that the plaintiff still had to prove the *existence* of the assignment. *Petty v. First National Bank of Quitman,* 278 S.W.2d 361 (Tex. Civ.App.—Texarkana 1955, no writ), involved a pleading which alleged in the alternative that, if a partnership was found to exist rather than mere individual status of one defendant, then a second individual who would be a partner was also liable. In another example of refusing to stretch the verified plea requirement, the court held that the alternative allegation was insufficient to require a sworn denial. Even closer to our point is *Smith v. Dunnam,* 83 S.W.2d 1009 (Tex.Civ.App.—Beaumont 1935, writ dism'd), which held that a pleading alleging that certain property was owned by a partnership was a mere conclusion rather than a direct allegation of partnership, and did not need to be denied under oath.

Appellant's sixth and final point of error complains that the trial court abused its discretion in not granting his motion for new trial based on newly discovered evidence. The evidence introduced by appellant at the hearing on motion for new trial consisted of financial records obtained from Shell Oil Company and appellee's bank. According to appellant, it showed that appellee had taken money paid to the Tiempo partnership by Shell and placed it in his personal account. Appellant claims that this evidence establishes appellee's

mishandling of partnership funds and is so conclusive as to require a new trial.

 Appellant correctly acknowledges that a motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court and will not be disturbed unless an abuse of discretion is shown. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). The party urging such a motion must prove the following indispensable elements at the hearing on the motion: 1) he must introduce admissible, competent evidence of the newly discovered evidence relied upon; 2) he must show lack of notice that the evidence existed before trial; 3) he must show that due diligence was used to procure the evidence before trial; 4) he must show that the evidence is more than merely cumulative or only tending to impeach an adversary's testimony; and 5) he must show that the evidence would probably produce a different result if a new trial were granted. *McInnes v. Yamaha Motor Corp., U.S.A.,* 659 S.W.2d 704, 714 (Tex.App.—Corpus Christi 1983), *aff'd* 673 S.W.2d 185 (Tex. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *In re Y,* 516 S.W.2d 199, 205–06 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

At trial, appellant himself testified that he had thirty days from January 4, 1983, the date the dissolution agreement was executed, to pay appellee the amount specified in the agreement. He was to use the thirty days to determine whether the accounting set forth in the agreement was accurate. He was sued for failure to pay the specified amount on October 11, 1983, long after the thirty days ended. On July 11, 1984, the trial court entered an order for appellee to authorize disclosure of records by the customers of G & A Oilfield Services.[1] The cause did not come to trial until November 13, 1984. Appellant had almost two years to discover the evidence he relies on for a new trial. Appellant, as a Tiempo partner, had full knowledge that his business performed testing services for

and had income from Shell. Yet he did not request the Shell records until August 1984, eighteen months after he agreed to pay appellee. Furthermore, the jury already had evidence before it that the partnership funds were handled loosely at best. The jury found that appellee was not guilty of the alleged misdealing. From the state of the record, we cannot say that the trial court abused its discretion in overruling appellant's motion for new trial.

Having carefully considered all of appellant's points of error, they are overruled. The judgment of the trial court is affirmed.

---

1. In fact, Shell was a customer of Tiempo, not G & A, but the order shows that appellant was granted broad pre-trial discovery by the trial court.