**Michael J. ROGERS, Appellant,**

v.

**RREF II CB ACQUISITIONS, LLC, Appellee.**

**NUMBER 13–15–00321–CV**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and filed November 17, 2016

Tom Wilkins, Wilkins & Wilkins, McAllen, for Appellant.

Darrell Wayne Cook, Darrell W. Cook & Associates, Dallas, for Appellee.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Justice Rodriguez

Appellant Michael J. Rogers appeals from a partial summary judgment granted in favor of appellee RREF II CB Acquisitions, LLC (RREF). RREF sued Rogers, alleging that he had defaulted on a promissory note with an outstanding balance of $1,502,731.84. RREF moved for summary judgment on its breach of promissory note claim and submitted various records and affidavits to support its motion. By what we construe as eight issues on appeal, Rogers argues that the trial court erred in granting summary judgment because there were many technical defects in RREF's summary judgment evidence. We affirm.

### I. BACKGROUND

RREF's petition in the trial court alleged that in 2006, Rogers borrowed $3,000,000 from Texas State Bank and executed a ten-year promissory note (the Note) in favor of Texas State Bank. The petition stated that the Note had become

RREF's property through a series of transactions: in 2008, Texas State Bank merged with Compass Bank; and in 2013, Compass Bank sold and assigned the Note to RREF. According to RREF, Rogers had not made any payments on the Note since May 24, 2012, leaving an unpaid principal balance of $1,502,731.84. On September 6, 2013, RREF filed this suit against Rogers, alleging breach of promissory note and other claims not before this Court.

On June 14, 2014, RREF moved for partial summary judgment on its breach of promissory note claim and incorporated four affidavits and ten exhibits into the motion by reference. At first, each of these affidavits incorrectly referred to the plaintiff as "RREF CB II Acquisitions, LLC" rather than its correct legal name "RREF II CB Acquisitions, LLC." Rogers objected to this discrepancy. At the hearing, RREF offered to submit corrected affidavits within the next three days. The trial court gave RREF leave to file corrected affidavits after the hearing, which RREF did on October 23, 2014. The trial court gave Rogers seven days to file any supplemental objections or response to the corrected affidavits. On October 30, 2014, Rogers filed objections to the corrected affidavits and to RREF's proposed summary judgment order. On January 28, 2015, the trial court granted summary judgment in favor of RREF's breach of promissory note claim, granting relief of approximately $1,500,000 for the principal balance on the loan, over $400,000 for accrued interest before and after default, approximately $16,000 for a late charge provided under the note, post-judgment interest at a rate of 17.5%, and costs. The trial court severed that claim, and this appeal followed.

Because Rogers challenges several technical aspects of RREF's affidavits and exhibits, we discuss each affidavit and exhibit in brief. First, RREF incorporated a testimonial affidavit from Jenna Maytas, who attested that she was the Vice President of Loan Servicing for Quantum Servicing Corporation, which serviced Rogers's loan. The primary subject of Maytas's affidavit was a summary of the balance owed on the Note, including interest and principal balances and loan history. Maytas identified herself as a custodian of records for Quantum and represented that she had personal knowledge of the procedure Quantum followed in collecting, verifying, and processing account information for loans. To support her testimony, Maytas principally relied upon and cited to Exhibit 4, a summary of relevant account information that we discuss below.

RREF also incorporated a testimonial affidavit from Jennifer Wimmer. Wimmer identified herself as the Vice President of Loan Workout for the parent company of RREF, a firm called Rialto Capital Partners. Among other things, Wimmer's affidavit declared that Rogers executed a valid note in favor of Texas State Bank; that Texas State Bank merged with Compass Bank; and that Compass Bank, as success-in-interest to Texas State Bank, assigned the note to RREF. She further testified that under the Note, Rogers promised to repay $3,000,000 at variable interest not to exceed 8.25% in 120 monthly installments, but that in the event of default, interest would "accrue at the highest rate allowable under law." According to Wimmer's affidavit, Rogers defaulted on the Note—he did not make any payments on the Note after May 24, 2012, despite an outstanding demand for payment—and a principal balance of $1,502,731.84, exclusive of interest, remained due and payable by Rogers to RREF.

RREF also incorporated two business records affidavits from Wimmer, which to-

gether were filed to authenticate and sponsor the following ten exhibits:

Exhibit 1 was purported to be the $3,000,000 promissory Note which Rogers executed in favor of Texas State Bank. The exhibit appeared to bear Rogers's signature and initials on several pages.

Exhibit 2 was identified as "a true and correct copy of the Federal Deposit Insurance Corporation Information page showing the merger between Texas State Bank and Compass Bank." The exhibit describes Texas State Bank as an "inactive institution" due to the fact that it had merged into Compass Bank on March 13, 2008.

Exhibit 3 was a document titled "Assignment of Loan Documents." The document listed the "Borrower" as "Michael J. Rogers," the "Assignor" as "Compass Bank as successor-in-interest to Texas State Bank," and the "Assignee" as "RREF II CB Acquisitions, LLC." The document set out that Compass Bank had entered a separate "Loan Sale Agreement" with RREF (a document which was also incorporated by RREF as Exhibit 8, *infra*). Exhibit 3 stated that based on this loan sale, Compass Bank was thereby assigning several instruments—the Note, a related mortgage, and associated loan documents—to RREF. The assignment bore the notarized signature of William H. Douning, Senior Vice President of "Compass Bank as successor-in-interest to Texas State Bank."

Exhibit 4 was identified by Maytas as a "true and correct copy of interest calculation." The document summarized vital account information regarding the Note and its surrounding context, including an initial balance of $3,000,000, a principal balance of $1,502,731.82, the applicable interest rates before and after default, and interest accrued. The document provided two account numbers for the loan: an "Old Loan Account" number and a "Quantum Loan Account" number. The document also listed dates of assignment, maturity, and default which corresponded with RREF's allegations in this suit and with the details provided in other exhibits.

Exhibits 5 through 7 were identified as communications drafted or received by Wimmer and Rogers. Exhibit 5, for instance, was purported to be a letter from Wimmer to Rogers regarding the "loan Rialto Capital recently purchased from Compass Bank." Attached to the letter was a proposed agreement between Rogers and Rialto, as well as the Assignment of Loan Documents (Exhibit 3). Exhibit 6 was allegedly an email drafted on Rogers's behalf by Kenneth Everhard, who identified himself as Rogers's CPA. Exhibit 7 was purported to be a letter from RREF to Rogers, whereby RREF was attempting to collect Rogers's debt under the Note.

Exhibit 8 was purported to be the "Loan Sale Agreement" between Compass and RREF, which itself had been referred to in the Assignment of Loan Documents (Exhibit 3) as the basis for the assignment of the Note and related documents to RREF.

Exhibit 9 was described as part of original loan application which Rogers had signed and submitted to Texas State Bank.

Exhibit 10 was purported to be a "Disclaimer of Oral Agreements" signed by Rogers as part of his original loan application.

On appeal, Rogers raises several arguments against RREF's summary judgment proof. We take up his issues in turn.

## II. STANDARD OF REVIEW

We review the trial court's granting of a traditional motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). When review-

ing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power*, 73 S.W.3d at 215. After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *Chacon v. Andrews Distrib. Co. Ltd.*, 295 S.W.3d 715, 721 (Tex. App.–Corpus Christi 2009, pet. denied).

 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *Krishnan v. Law Offices of Preston Henrichson, PC*, 83 S.W.3d 295, 299 (Tex. App.–Corpus Christi 2002, pet. denied) (applying an abuse of discretion standard to rulings on summary judgment evidence). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *See Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

### III. CORRECTION OF PARTY'S NAME

 By his first issue, Rogers complains that RREF at first submitted summary judgment evidence which incorrectly identified the plaintiff as "RREF CB II Acquisitions, LLC," rather than its correct name "RREF II CB Acquisitions, LLC." Rogers insists that before the mistake could be corrected, RREF was required to produce evidence justifying a correction, such as proof that there was no entity called "RREF CB II Acquisitions, Inc."

Rogers produces no authority for this contention, and we find the opposite to be the rule. In the past we have held that a trial court erred by failing to give a party the opportunity to amend his affidavits to cure technical defects. *Garcia v. Willman*, 4 S.W.3d 307, 311 (Tex. App.–Corpus Christi 1999, no pet.); *see also* TEX. R. CIV. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). RREF did not refuse to amend the affidavits, but instead cured the defects.

 Rather, the only legitimate grounds for objection would be that the corrected affidavits were filed after the deadline prescribed by rule 166a. *See* TEX. R. CIV. P. 166a(c). Except on leave of court, with notice to opposing counsel, the motion for summary judgment and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. *Id.*; *Dorsey v. Raval*, 480 S.W.3d 10, 15–16 (Tex. App.–Corpus Christi 2015, no pet.). "Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). When an affirmative showing is made that the trial court granted leave, late-filed evidence will be deemed to have been properly filed and considered by the trial court. *See Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Carrico v. Kondos*, 111 S.W.3d 582, 587 n.5 (Tex. App.–Fort Worth 2003, pet. denied). The court's leave "may be reflected in a separate order, a recital in the summary judgment, or an *oral ruling* contained in the reporter's record of the summary judgment hearing." *Wright v. Hernandez*, 469 S.W.3d 744, 755 (Tex. App.–El Paso 2015, no pet.) (emphasis added); *Pipkin v. Kroger Tex., LP*, 383

S.W.3d 655, 663 (Tex. App.–Houston [14th Dist.] 2012, pet. denied).

Here, the trial court stated, "I will grant leave to file not a new summary judgment, but new affidavits. And I can grant the leave from the bench, I believe." The trial court orally granted the plaintiff leave to file corrected affidavits using the plaintiff's proper name, "RREF II CB," within three days of the hearing, and it is undisputed that the plaintiff completed this task. See *Wright*, 469 S.W.3d at 755; *Pipkin*, 383 S.W.3d at 663. Based on this affirmative showing, we deem this late-filed evidence to have been properly filed and considered by the trial court. *See Auten*, 209 S.W.3d at 702; *Carrico*, 111 S.W.3d at 587 n.5. The trial court's oral leave for late filing thus allowed RREF the opportunity to cure its errors.[1]

Rogers further argues that the affidavits' use of the incorrect name "RREF CB II" was not simply a typo, but a series of "constant testimonial assertions" which somehow precluded the trial court from allowing the errors to be corrected, even with leave. As support for this argument, Rogers cites *R & R Marine, Inc. v. Max Access, Inc.* 377 S.W.3d 780 (Tex. App.–Beaumont 2012, no pet.). In that case, the plaintiff sued two separate but similarly named entities—R & R Marine Offshore and R & R Marine—claiming that it had entered into a contract with "R & R," but never specifying which one. *Id.* at 784. The

plaintiff's summary judgment motion and evidence equivocated between the two R & R entities, to the point that the trial court could not tell "which entity [plaintiff] contends was the contracting party." *Id.* at 785–86. Because this equivocation was a genuine source of confusion, it prevented the plaintiff from conclusively establishing its burden on the element of contractual privity, and the Beaumont court reversed summary judgment. *Id.* at 786.

We find *R & R Marine* to be distinguishable. Here, we find no signs of uncertainty or equivocation between two actual entities—RREF is a single entity which can certainly identify itself—and there is no indication that these typos were a genuine source of confusion. Instead, this case more closely resembles a misnomer problem, which occurs when a plaintiff misnames itself or another party in some document but the correct parties are involved in the suit. *See Reddy P'ship/ 5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012) (per curiam); *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam) (orig. proceeding). This resemblance to misnomer provides some guidance: courts generally allow parties to correct a misnomer so long as it is not misleading and did not prejudice the other party. *Reddy P'ship*, 370 S.W.3d at 377; *Greater Hous. Ortho-*

---

1. As another subset of this issue, Rogers complains that the trial court gave him insufficient time—seven days—to respond and object to RREF's corrected affidavits. Rogers cites rule 166a(c) as support for this argument that twenty-one days were required. In relevant part, rule 166(c) provides:

 Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of

 court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

 Tex. R. Civ. P. 166a(c). However, each of the two sentences above begin with the same phrase: "except on leave of court." We have already concluded that the trial court properly granted RREF leave to file late evidence. Rogers cites no other authority as support for his argument.

*paedic*, 295 S.W.3d at 325.[2] It is undisputed that the trial court granted leave to correct the affidavits and that RREF did so in a timely manner. We therefore cannot agree with Rogers that the form of RREF's typos were somehow binding or precluded correction. We overrule Rogers's first issue.

### IV. PERSONAL KNOWLEDGE

By his second issue, Rogers protests that the affidavits of Wimmer and Maytas were not based on personal knowledge. Wimmer executed a testimonial affidavit and also two business records affidavits, and Maytas executed a testimonial affidavit. Each affidavit stated that the affiant had "personal knowledge" of all matters stated in the affidavit. The affidavits also described three potential bases for that personal knowledge: the affiants' jobs, their review of records, and their roles as custodians of records. According to Rogers, this is insufficient. We disagree.

### A. Applicable Law

■ To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the defendant executed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note. *Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.–Houston [14th Dist.] 2012, no pet.); *see also Burrows v. Trujillo*, No. 13–10–245–CV, 2010 WL 4156460, at *2 (Tex. App.–

Corpus Christi Oct. 21, 2010, no pet.) (mem. op.).

■ A summary judgment may be based on uncontroverted testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c); *see Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997) (per curiam). When an affidavit meets these criteria and the opposing party fails to controvert the affidavit through deposition testimony, interrogatories, or other discovery, the affidavit is competent summary judgment evidence. *See Trico Techs.*, 949 S.W.2d at 310.

■ Rule 166a(f) requires that affidavits supporting summary judgment must "be made on personal knowledge," TEX. R. CIV. P. 166a(f), and must "unequivocally represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge." *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam) (orig. proceeding). An affidavit must disclose the basis on which the affiant has personal knowledge of the facts asserted. *See Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex. 1988) (per curiam). We look to the entire affidavit to determine whether the facts asserted therein are based on personal knowledge. *Noriega v. Mireles*, 925 S.W.2d 261, 264

---

2. In a typical misnomer case, in which a plaintiff misnames the defendant, courts are advised to be "flexible" because "the party intended to be sued has been served and put on notice that it is the intended defendant." *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 326 (Tex. 2009) (per curiam) (orig. proceeding). "In a case like this, in which the plaintiff misnames itself, the rationale for flexibility in the typical misnomer case ... applies with even greater force."

*Reddy P'ship/5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 377 (Tex. 2012) (per curiam); *compare Greater Hous. Orthopaedic*, 295 S.W.3d at 325 (discussing the separate problem of "misidentification," which occurs when there are two separate entities with similar names and the plaintiff sues the wrong one, and which often has "harsh" consequences for statute-of-limitations purposes).

(Tex. App.–Corpus Christi 1996, writ denied).

■■■■ An affiant's position or job responsibilities may demonstrate the basis of her personal knowledge. *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.–Houston [14th Dist.] 2010, no pet.); *Hernandez v. W–S Indus. Servs. Inc.*, No. 13–14–00404–CV, 2015 WL 5136771, at *3 (Tex. App.–Corpus Christi Aug. 31, 2015, no pet.) (mem. op.). The personal knowledge requirement may be satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit. *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.–San Antonio 1998, pet. denied); *see also Core v. Citibank, NA*, No. 13–12–00648–CV, 2015 WL 1631680, at *3 (Tex. App.–Corpus Christi Apr. 9, 2015, pet. denied) (mem. op.) (same).

■■■■ Review of the pertinent records may also establish an affiant's personal knowledge in some situations. *See In re EI DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004) (orig. proceeding) (per curiam); *Ortega v. Cach, LLC*, 396 S.W.3d 622, 628 (Tex. App.–Houston [14th Dist.] 2013, no pet.) (holding that a bank officer could testify that an account was transferred based on personal knowledge acquired from bank's records, and he was not required to provide supporting documentation); *Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 131 (Tex. App.–Dallas 2014, no pet.) (same, citing *Ortega*, 396 S.W.3d at 628); *see also Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 926–27 (Tex. App.–Dallas 2007, no pet.); *Noriega*, 925 S.W.2d at 265 ("Although reading … records does not lead to 'personal knowledge' in the truest sense of the [term], in [some situations] it is the only means by which" to gain personal knowledge).

■■■■ Similarly, status as a custodian of records with a relationship to the facts of the case may also help establish the affiant's personal knowledge. *Nat'l Health Res.*, 429 S.W.3d at 130 ("When an affiant's summary judgment affidavit contains testimony that identifies him as a record custodian and establishes his relationship with the facts of the case in a manner sufficient to demonstrate the facts at issue, the personal knowledge requirement for summary judgment affidavits may be satisfied."); *Rockwall Commons Assoc., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 510 (Tex. App.–El Paso 2010, no pet.) (same); *see Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 359 (Tex. App.–Dallas 2007, pet. denied) (finding personal knowledge based on testimony that the affiant was custodian of records and a "foreclosure specialist" for the loan servicer).

## B. Application

■■■■ Here, Wimmer's testimonial affidavit stated that she was a senior vice president of loan workout at the parent company of RREF, which allegedly owned the Note. Wimmer came to her testimony through review of the pertinent records, and she averred that she or a person under her supervision had custody and control of all of Rogers's account records. Wimmer's business records affidavits repeat these assertions and also state that she is "a custodian of the records of RREF." Finally, her business records affidavits aver that the records for Rogers's account were kept in the ordinary course of business, whereby it was regular practice to make such records at or near the time of the underlying event or condition, with knowledge of the event or condition.

In Maytas's affidavit, she identified herself as the vice president of loan servicing administration for Quantum Servicing Corporation, which was the loan service provider for RREF. Her affidavit provided as follows:

My duties include oversight of Quantum's receipt of electronic files and loan servicing files for loans purchased by [RREF] and maintenance of and data input with respect to loan histories on behalf of [RREF]. Accordingly, I have personal knowledge of the recordkeeping methods of Quantum and how Quantum obtained and maintains the account histories discussed herein.

Maytas averred that she had personal knowledge of all matters therein and that she or a person under her supervision had care, custody, and control of the payment records concerning the account of Michael Rogers. Her affidavit continued, "On or about May 22, 2013, Quantum received the electronic files associated with the Note. Thereafter, Quantum employees verified the electronic data against the Compass Bank's file."

Applying the law to these facts, each affiant made a direct and unqualified claim of "personal knowledge," see *Humphreys*, 888 S.W.2d at 470, and each averred that she occupied an oversight role in a company that directly attended to the Note, which made it more reasonable to assume personal knowledge of the loan arrangements and records which were the subject of the affidavits, see *Stucki*, 963 S.W.2d at 780; see also *Core*, 2015 WL 1631680, at *3. Each affiant testified that she or a person under her control had custody over account records for the Note, and each based her affidavit on review of the pertinent records. *See DuPont*, 136 S.W.3d at 224. Furthermore, in her business records affidavits, Wimmer testified that she was a custodian of records for RREF itself, see

*Nat'l Health Res.*, 429 S.W.3d at 130, and she also "substantiate[d the] availability of ... business and account records to support [her] attestation of personal knowledge regarding calculations of amounts owed under the documents." *See Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 376 (Tex. App.–Dallas 2011, no pet.). Finally, Maytas described her duties related to maintaining accounts for RREF, including her responsibility for verifying the loan history, payment information, and account data. *See Valenzuela*, 317 S.W.3d at 553. Given that the affiants set out three potential bases for personal knowledge, we conclude that the trial court did not abuse its discretion in finding that Wimmer and Maytas adequately demonstrated their personal knowledge. *See Radio Station KSCS*, 750 S.W.2d at 761–62; *Krishnan*, 83 S.W.3d at 299. We overrule Rogers's second issue.

## V. Supporting Documentation Was Properly Attached to Affidavits

By his third issue, Rogers argues that RREF did not satisfy rule 166a(f), which provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be *attached thereto or served therewith.*" *See* Tex. R. Civ. P. 166a(f) (emphasis added). Rogers notes that the affidavits were not physically attached to RREF's motion and were not filed at the same time as the motion.

However, a party satisfies this rule and "achieves the task of ensuring that the evidence is properly before the court either by requesting in the motion that the trial court take judicial notice of the evidence that is already in the record or by incorporating that document or evidence in the party's motion." *Steinkamp v. Caremark*, 3 S.W.3d 191, 194 (Tex. App.–El Paso 1999, pet. denied); *see also Mat-*

*thews v. Sohn*, No. 13–12–00302–CV, 2013 WL 2949562, at *4 n.5 (Tex. App.–Corpus Christi June 13, 2013, no pet.) (mem. op.) (citing *Steinkamp* with approval). We have held that the trial court need not announce that it has taken judicial notice of the records. *Vahlsing, Inc. v. Mo. Pac. R. Co.*, 563 S.W.2d 669, 674 (Tex. Civ. App.–Corpus Christi 1978, no writ).

It is undisputed that RREF's ten exhibits were attached to Wimmer's two business records affidavits. It is also undisputed that RREF's motion for summary judgment included a complete list of RREF's affidavits and their attached exhibits. The motion stated that these affidavits and exhibits were incorporated by reference into the motion. With regard to summary judgment motions, incorporation by reference "does not require 'magic language'; instead, the non-movant simply must alert the court that previously filed documents are being relied upon and make the court aware of which ones are to be considered." *Ramirez v. Colonial Freight Warehouse Co., Inc.*, 434 S.W.3d 244, 252 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (citing *Steinkamp*, 3 S.W.3d at 194).[3] It is undisputed that RREF alerted the court of its reliance on the prior summary judgment evidence. Moreover, the motion specifically asked the trial court to take judicial notice of the documents. *See Vahlsing*, 563 S.W.2d at 674. We conclude that no abuse of discretion is shown in the trial court's decision to consider these documents as "attached thereto or served therewith." *See* Tex. R. Civ. P. 166a(f); *Krishnan*, 83 S.W.3d at 299. We overrule Rogers's third issue.

## VI. Business Records Exception

By his fourth issue, Rogers contends that seven out of RREF's ten exhibits were inadmissible hearsay. According to Rogers, these exhibits were created by third parties, and therefore, special rules governed their admissibility under the business records exception to the hearsay rule. Specifically, he argues that Exhibits 1–5 and 9–10 fail the test we laid out in *Abrego v. Harvest Credit Management VII, LLC*, wherein we held that "[d]ocuments received from another entity are not admissible under rule 803(6), if the witness is not qualified to testify about the entity's record keeping." *See* No. 13–09–00026–CV, 2010 WL 1718953, at *3 (Tex. App.–Corpus Christi Apr. 29, 2010, no pet.) (mem. op.). Rogers contends that because neither Wimmer nor Maytas could verify the record-keeping practices of the third parties whose documents they relied upon, they therefore could not sponsor these exhibits as business records.

As we explain below, we find Rogers's argument unavailing for three reasons. To begin with, only one important exhibit is truly subject to challenge as a third-party business record—Exhibit 4—and this exhibit was adequately supported by RREF's summary judgment proof. Next, four of the contested exhibits were not subject to challenge under the special rules for third-party business records. Finally, the two remaining exhibits which Rogers challenges were simply non-essential to RREF's summary judgment proof.

## A. Applicable Law

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d), 802. The

---

3. *See, e.g., State v. Valerie Saxion, Inc.*, 450 S.W.3d 602, 609 (Tex. App.–Fort Worth 2014, no pet.) (discussing the incorporation of earlier-filed exhibits into a summary judgment response as a matter of plain and unobjectionable background fact).

proponent of hearsay evidence has the burden of showing that the testimony fits within an exception to the general rule. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Under normal circumstances, the predicate for the introduction of a record under the business records exception, Texas Rule of Evidence 803(6), requires proof that (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. Tex. R. Evid. 803(6); *Powell v. Vavro, McDonald, and Assocs., LLC*, 136 S.W.3d 762, 765 (Tex. App.–Dallas 2004, no pet.). These prerequisites may be shown by the affidavit of a custodian or qualified witness, or by an affidavit or unsworn declaration that complies with rule of evidence 902(10). Tex. R. Evid. 803(6), 902(10); *see also Abrego*, 2010 WL 1718953, at *2. Rule 902(10) provides a model form for a business records affidavit, and it states the affidavit "is sufficient if it includes the" the model form language, but "this form is not exclusive." Tex. R. Evid. 902(10)(b); *see also Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240 (Tex. App.–Houston [1st Dist.] 2010, no pet.) (op. on reh'g).

█ However, special concerns may arise if the subject of the business records affidavit is a document which originated from a third-party. It is true that in *Abrego*, we addressed those special concerns by holding that "[d]ocuments received from another entity are not admissible under rule 803(6), if the witness is not qualified to testify about the entity's record keeping." 2010 WL 1718953, at *3 (quoting *Martinez v. Midland Credit Mgmt., Inc.*,

250 S.W.3d 481, 485 (Tex. App.–El Paso 2008, no pet.). However, *Abrego* does "not hold that verification of accuracy is the sole means of admitting third-party documents under the business records exception." *See Simien*, 321 S.W.3d at 243 (citing *Martinez*, 250 S.W.3d at 485). Rather, as other courts have recognized, *Abrego*'s method of corroborating third-party business records is compatible with other methods of achieving the same task. *See id.*; *see also Dodeka, LLC v. Campos*, 377 S.W.3d 726, 732 (Tex. App.–San Antonio 2012, no pet.). For example, the *Dodeka* court acknowledged our holding that, generally, "documents received from another entity are not admissible under Rule 803(6), if the sponsoring witness is not qualified to testify about the other entity's record keeping," but went on to note that other methods may be used to solve a third-party record problem. *Dodeka*, 377 S.W.3d at 732 (citing *Abrego*, 2010 WL 1718953, at *3).

█ It has been widely held, and we agree, that a document authored or created by a third party may be admissible as business records of a different business if: (1) the document is incorporated and kept in the course of the testifying witness's business, (2) that business typically relies upon the accuracy of the document's content, and (3) the circumstances otherwise indicate the document's trustworthiness. *See Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 130 (Tex. App.–Dallas 2014, no pet.); *Simien*, 321 S.W.3d at 240–41; *Dodeka*, 377 S.W.3d at 732; *see also US v. Ullrich*, 580 F.2d 765, 771 (5th Cir. 1978) (same under federal rule 803(6)); *Roper v. CitiMortgage, Inc.*, No. 03–11–00887–CV, 2013 WL 6465637, at *12 (Tex. App.–Austin Nov. 27, 2013, no pet.) (mem. op.); *Ainsworth v. CACH, LLC*, No. 14–11–00502–CV, 2012 WL 1205525, at *5 (Tex. App.–Houston [14th Dist.] Apr. 10,

2012, no pet.) (mem. op.); *Nice v. Dodeka, LLC*, No. 09–10–00014–CV, 2010 WL 4514174, at *4 (Tex. App.–Beaumont Nov. 10, 2010, no pet.) (mem. op.).

Moreover, authorities including the Texas Supreme Court have suggested that if the proponent of the business record verifies the facts underlying the document using a reliable means, based on personal knowledge, this may resolve a third-party record problem. *See Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 813 (Tex. 1982); *Simien*, 321 S.W.3d at 243; *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 112 (Tex. App.–Dallas 1991, no writ); *see also Martinez*, 250 S.W.3d at 485; *Abrego*, 2010 WL 1718953, at *2.

### B. Exhibit 4 Satisfies Third–Party Business Record Rules

We first turn to Exhibit 4, which is an account summary purportedly created by the affiant Maytas on behalf of Quantum and its client RREF. In evaluating this exhibit, we mainly apply the three-part integration test. *See Nat'l Health Res.*, 429 S.W.3d at 130. But because all of the methods described above serve the same purpose and are nonexclusive, we borrow principles from each method to perform our evaluation under the integration test.

We first note that RREF's evidence strongly suggests that Exhibit 4 was "incorporated" into RREF's business records. *See Nat'l Health Res.*, 429 S.W.3d at 130. As Maytas testified, the information in Exhibit 4 was primarily drawn from and verified against the records of Compass Bank as successor-in-interest to Texas State Bank, and Quantum had made this third-party information a part of Rogers's current records on behalf of its client RREF. *See id.* Exhibit 4 itself states that the "old" loan account number had been replaced by a new "Quantum Loan Acct. 7000088538," suggesting that the information in this exhibit had been fully integrated into Quantum's servicing efforts on behalf of RREF. Furthermore, in Wimmer's business records affidavit, she testified that she was RREF's custodian over Exhibit 4 and all other records relating to Rogers's account. According to her affidavit, all of these records "were kept in the regular course of business by RREF relating to ... RREF's account with" Rogers.

The summary judgment record also indicates that RREF typically relied upon the accuracy of the document's content. *See id.* For instance, the Loan Sale Agreement (Exhibit 8) shows that RREF relied upon Compass's accounting of principal and interest as the basis for purchasing Rogers's debt, reaching a sale price for the debt which was based upon Exhibit 4's record of the outstanding principal balance plus interest. *See Abrego*, 2010 WL 1718953, at *3 (citing *Cockrell*, 817 S.W.2d at 112) ("A witness may be qualified to testify about another entity's documents if there is testimony that documents obtained by assignment were kept in the ordinary course of business and formed the basis for ongoing transactions"). Exhibit 7, which is a letter from RREF to Rogers, shows that after RREF acquired the Note, RREF relied upon the information in Exhibit 4 as a basis for negotiating and pursuing the debt. Finally, both Wimmer and Maytas relied upon Exhibit 4's third-party information as a basis for their affidavits here.

As for whether the "circumstances otherwise indicate the document's trustworthiness," we conclude that they do. *See Nat'l Health Res.*, 429 S.W.3d at 130. Multiple courts have suggested that where the factual content of a third-party document is verified based on personal knowledge, this in itself may help resolve a third-party record problem. *See Duncan Dev.*, 634 S.W.2d at 813; *Simien*, 321 S.W.3d at 243; *Cockrell*, 817 S.W.2d at 112; *see also Mar-*

*tinez*, 250 S.W.3d at 485; *Abrego*, 2010 WL 1718953, at *2. If this is the case, then the same steps can certainly serve as an indication of trustworthiness. *See Nat'l Health Res.*, 429 S.W.3d at 130. Here, Maytas's affidavit swore to the factual content of the exhibit and the record-keeping practices by which Quantum gathered this information and created the resulting Exhibit 4. Maytas explained that in her role as Quantum's vice president of loan servicing, she had supervisory authority over verifying the facts underlying Exhibit 4. Similarly, in Wimmer's initial letter to Rogers (Exhibit 5), she refers to extracting information "from the Compass Bank file." We have already concluded that Maytas and Wimmer demonstrated their personal knowledge of Rogers's account and its records based on their job responsibilities, custodial roles, and review of relevant records. *See Radio Station KSCS*, 750 S.W.2d at 761–62. At a minimum, therefore, we find a strong indication of trustworthiness in Maytas's sworn verification based on her personal knowledge. *See Nat'l Health Res.*, 429 S.W.3d at 130.

We conclude that Wimmer and Maytas's affidavits, together with the exhibits they sponsor, provided a sufficient basis to corroborate Exhibit 4. RREF demonstrated that this exhibit had been incorporated into RREF's records, was relied upon for its accuracy, and verified in terms of its trustworthiness. *See id.* Because this integration fully addressed the concerns which surround third-party documents, we find no merit in Rogers's contention that this exhibit must be excluded as a third-party document. *See id.*; *Simien*, 321 S.W.3d at 240–41; *see Dodeka*, 377 S.W.3d at 732.

## C. Exhibits 1, 3, 5, and 10 Were Not Subject to Challenge under the Special Rules for Third–Party Business Records

■ Of the six remaining exhibits which Rogers challenges as third-party records, four elude his challenge entirely. First, Exhibit 5 quite clearly did not originate from a third-party. It is a communication to Rogers from Wimmer, who was the author of the business records affidavits. Thus, Rogers's challenge to Exhibit 5 as a third-party document is misdirected.

■ Second, three of the remaining exhibits are not subject to challenge on the basis of the hearsay rule "because, as contracts, they have legal effect independent of the truth of any statements contained therein and are not hearsay." *See Rockwall Commons*, 331 S.W.3d at 511 (citing *Ltd. Logistics Servs. v. Villegas*, 268 S.W.3d 141, 146 (Tex. App.–Corpus Christi 2008, no pet.)). These contractual exhibits include the Note (Exhibit 1), the Assignment of Loan Documents (Exhibit 3), and the Disclaimer of Oral Agreements which was purportedly signed by Rogers (Exhibit 10). These documents were not subject to the hearsay rule to begin with, and they thus had no need for the curative powers of the business records exception to the hearsay rule.

■ Third, to the extent that Rogers complains of the authenticity of Exhibits 1, 3, and 10, he did not file a sworn denial of their authenticity as contemplated by rule of civil procedure 93, which provides a means of establishing execution and assignment. *See* TEX. R. CIV. P. 93. Under Rule 93(7), where any pleaded action is founded upon a written instrument, the defendant must file a sworn denial of execution or else "the instrument shall be received in evidence as fully proved." *See id.* R. 93(7). This Court has held that failure to enter a sworn denial concerning the execution will result in deemed admission of genuine execution. *Conover v. Jackson*, 710 S.W.2d 621, 624 (Tex. App.–Corpus Christi 1986, writ ref'd n.r.e.); *see*

*Dorsett*, 389 S.W.3d at 614; *Rockwall Commons Assocs.*, 331 S.W.3d at 511 ("Loughlin's affidavit testimony regarding the signatures on the documents was unnecessary because, as we have noted, Appellants did not deny execution of the documents. Consequently, the documents are admitted as fully proved."). Similarly, rule 93(8) provides that a sworn denial is required in order to dispute the genuineness of an "assignment of a written instrument" upon which suit is brought by the assignee. TEX. R. CIV. P. 93(8). In the absence of a sworn denial, the assignment "shall be held as fully proved." *Id.*

Here, RREF properly pleaded a claim founded upon the Note and also pleaded the facts of execution and assignment. Rogers did not properly file a verified denial. Thus, the genuineness of execution and assignment are deemed admitted, and the supporting exhibits themselves "shall be received in evidence as fully proved." *See* TEX. R. CIV. P. 93(7)–(8). We therefore find Rogers's challenge to Exhibits 1, 3, and 10 to be without merit.

### D. Exhibits 2 and 9 Were Not Essential Summary Judgment Proof

 Rogers also challenges Exhibits 2 and 9 as inadmissible under the special rules for third-party business records. However, even if Rogers is correct, this conclusion would have no impact on RREF's case for summary judgment.

Wimmer described Exhibit 2 as a "copy of the Federal Deposit Insurance Corporation Information page showing the merger between Texas State Bank and Compass Bank." RREF offered this exhibit as evidence that title to the Note passed from Texas State Bank to Compass Bank. Regardless of the merit of Rogers's argument, we have already determined that Rogers's failure to file a sworn denial concerning ownership of the Note resulted in the deemed admission of the Assignment of Loan Documents (Exhibit 3)—which bears notarized signature of William H. Douning, Senior Vice President of "Compass Bank as successor-in-interest[4] to Texas State Bank," who thereby transferred the Note to RREF—as well as a deemed admission of the facts supporting ownership. *See* TEX. R. CIV. P. 93(8).

Likewise, Exhibit 9 is purported to be part of the original loan application which Rogers signed and submitted to Texas State Bank. This exhibit has limited relevance to the execution of the Note. *See Dorsett*, 389 S.W.3d at 613. However, Rogers's failure to properly enter a sworn denial concerning the execution has already resulted in a deemed admission of the fact of execution as well as the exhibits which substantiate this fact. *See* TEX. R. CIV. P. 93(7); *Conover*, 710 S.W.2d at 624. Thus, Rogers's arguments against the cumulative content of Exhibits 2 and 9 have no impact on summary judgment.

### E. Summary

We have found Rogers's challenges to these exhibits to be either without merit or without any substantial impact on summary judgment. We therefore overrule Rogers's fourth issue.

### VII. CONCLUSORY STATEMENTS

 By his fifth issue, Rogers complains that Wimmer's and Maytas's affidavits are largely based on conclusory state-

---

4. *See, e.g., Tyco Valves & Controls, LP v. Colorado*, 365 S.W.3d 750, 773 (Tex. App.–Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885 (Tex. 2014). ("When applied to corporations, the term 'successor' ... is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession ....").

ments. On this basis, he protests that the trial court should not have considered several statements found in Wimmer's affidavit, such as the following:

> On or about August 25, 2006, Defendant MICHAEL J. ROGERS signed a Promissory Note ... given in favor of Texas State Bank. See Exhibit 1 to RREF BRA, a true and correct copy of the Note dated August 25, 2006. Defendant signed the Note on page three, six, seven, eight, and nine of the Note. Page 2 of the Note states that should Defendant default under the terms of the Note, the holder is entitled to recover the full amount due and owing on the Note at the time of Default.

Similarly, Rogers contends that all portions of Maytas's affidavit which discuss payment and interest calculations are conclusory.

 A conclusory statement is one that does not provide the underlying facts to support the conclusion and, therefore, is not proper summary-judgment proof. *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex. App.–Houston [1st Dist.] 1997, no writ). Conclusory statements are not susceptible to being "readily controverted," a condition required before the affidavit of an interested witness may support summary judgment. *Rockwall Commons,* 331 S.W.3d at 512.

 However, "an affidavit is sufficient summary judgment evidence only when it gives detailed accounts of the facts it attests to or *when it provides supporting documents* which tend to support the statements made." *Brown v. Mesa Distribs., Inc.,* 414 S.W.3d 279, 287 (Tex. App.–Houston [1st Dist.] 2013, no pet.) (emphasis added); *see Rockwall Commons Assocs.,* 331 S.W.3d at 512; *cf. Fairbank v. First Am. Bank, SSB,* No. 05–06–00005–CV, 2007 WL 2247371, at *2 (Tex. App.–Dallas August 7, 2007, no pet.) (mem. op.)

(finding affidavit conclusory where it did not describe underlying facts or present supporting documentation).

Here, each of the challenged statements simply summarizes the detailed factual content of RREF's ten exhibits, which the affidavits refer to and rely upon. Thus, to "the extent that the complained-of statements explain the content of the attached documents, we find that they are not conclusory." *See Rockwall Commons Assocs.,* 331 S.W.3d at 512. We overrule Rogers's fifth issue.

## VIII. INCONSISTENCY AND CONTRADICTION

 As the basis for his sixth issue, Rogers cites the rule that summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX. R. CIV. P. 166a(c). Rogers argues that the references to "RREF II CB" in the corrected affidavits are contradictory to and inconsistent with the references to "RREF CB II" in the original affidavits, thereby violating Rule 166a(c). *See id.*

Other courts have rejected similar arguments based upon similar facts. For instance, in *Hernandez v. Lukefahr,* the court rejected a similar argument when an affidavit contained a typo in a party's name. *See* 879 S.W.2d 137, 143 (Tex. App.–Houston [14th Dist.] 1994, no writ). "A mere typographical error," the court reasoned, is not a prohibited inconsistency if it causes no confusion. *Id.* "Rather, the kind of inconsistency prohibited by the rule is an affiant's stating equivocating positions which do not serve to clarify the pertinent issues in the case for which the affidavit is being offered." *Id.; see also 8920 Corp. v. Alief Alamo Bank,* 722

S.W.2d 718, 720 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.) (holding that a "minor discrepancy" in a summary judgment affidavit, such as the incorrect name of the person making the supporting affidavit, is no cause for reversal).

*Hernandez* stands in contrast with the bona fide inconsistencies found in cases such as *FFP Marketing Company, Inc. v. Long Lane Master Trust IV.* 169 S.W.3d 402, 410 (Tex. App.–Fort Worth 2005, no pet.). There, the affiant testified that the claimant was the holder and *beneficial* owner of a set of notes, guarantee, and loan documents. *Id.* However, the very summary judgment evidence upon which the affiant relied showed that the claimant was in fact the holder and *legal* owner—a difference with legal significance. *Id.* at 410–11. The court found that the affidavit was internally inconsistent with its supporting evidence and raised a fact issue concerning ownership of notes and guarantees, precluding summary judgment. *Id.*; *Nitishin v. Fed. Debt Mgmt., Inc.*, No. 05–95–00531–CV, 1996 WL 76232, at *3 (Tex. App.–Dallas Feb. 21, 1996, no writ) (finding summary judgment inappropriate where certain parts of a plaintiff's affidavit stated that the interest rate for a note should be determined by "Northwest Bank," and other parts of the same affidavit stated that the interest rate should be determined by "Bank One, NA"—both actual entities).

Here, each affiant testified to a substantively consistent statement of facts which showed that "RREF CB II" was entitled to relief. When this was revealed to be a widespread typo rather than an actual entity, both affiants corrected their affidavits with leave of the trial court. In their corrected affidavits, each affiant unequivocally testified as to the same, substantively consistent statement of facts which showed that the true plaintiff, RREF II CB, was

entitled to relief. There is no indication that these typos were a genuine source of confusion or uncertainty, and they did not muddle the issues in the case. *See Hernandez*, 879 S.W.2d at 143. We thus find that it was not a prohibited inconsistency, as Rogers urges. *See* Tex. R. Civ. P. 166a(c); *cf. FFP Mktg.*, 169 S.W.3d at 410. We overrule Rogers's sixth issue.

## IX. ESTABLISHING SIGNATURE, ASSIGNMENT OF THE NOTE, AND AMOUNT OWING

By his seventh issue, Rogers argues that RREF failed to establish three elements of a breach of promissory note claim: that Rogers signed (i.e., executed) the Note, that RREF owned the Note through proper chain of title, and the amount due and owing. *See Dorsett*, 389 S.W.3d at 613.

As we previously noted, Rogers failed to file a sworn denial of the validity of the Note and its chain of title under rule 93, which resulted in a deemed admission. *See* Tex. R. Civ. P. 93(7)–(8); *see Conover*, 710 S.W.2d at 624. RREF has introduced exhibits to substantiate these facts, which were "received in evidence as fully proved." *See* Tex. R. Civ. P. 93(7)–(8). RREF therefore carried its summary judgment burden to show that Rogers executed the Note and that RREF is the owner or holder of the note. *See Sw. Elec. Power*, 73 S.W.3d at 215; *Dorsett*, 389 S.W.3d at 613.

RREF's exhibits also demonstrate the element that a certain balance was due and owing on the note. *See Dorsett*, 389 S.W.3d at 613. The Note itself shows the original principal, the pre-default and post-default interest rates, and the relevant timeframe for Rogers's obligation to pay. The fact that Rogers did not meet this obligation is supported by Exhibit 4, an account history which reports the initial balance and inter-

est rate, the schedule of repayment, the date Rogers ceased repayment, the balance of principal and interest remaining from the date of the alleged breach, subsequent accruals of post-default interest, and other information which supports this element. Likewise, the Loan Sale Agreement from Compass to RREF (Exhibit 8) shows that at the time of sale, the Note had an outstanding principal balance of $1,502,-731.84—but that RREF was able to acquire this distressed debt for the purchase price of $982,212.11.

Moreover, Wimmer and Maytas incorporated much of the above information into their affidavits as testimony. *See FFP Mktg.*, 169 S.W.3d at 409 (considering the affidavit of the vice president of the loan servicer for an assigned note, and taking as granted the affiant's ability to swear to loan information); *see also Das v. Deutsche Bank Nat. Trust Co.*, No. 05-12-01612-CV, 2014 WL 1022385, at *2 (Tex. App.–Dallas Mar. 5, 2014, pet. denied) (mem. op.) (accepting affidavit testimony from an employee of the "loan . . . servicing agent" as valid evidence of the balance due and owing on the note, given the employee's testimony that he had verified and researched the loan's history and current account information on behalf of the holder, Deutsche Bank); *Albright v. Regions Bank*, No. 13-08-262-CV, 2009 WL 3489853, at *4 (Tex. App.–Corpus Christi Oct. 29, 2009, no pet.) (mem. op.) ("An affidavit made on personal knowledge of the bank officer, which identifies the notes and guaranty and recites the principal and interest due . . . is sufficient to support a summary judgment motion."); *Greene v. Deutsche Bank Nat. Trust Co.*, No. 01-04-00483-CV, 2005 WL 1244604, at **1, 3 (Tex. App.–Houston [1st Dist.] May 26, 2005, pet. denied) (mem. op.) (accepting the affidavit of a manager for the "loan servicing agent" as a person sufficiently situated to testify on the balance owed, based on synthesis of eleven records related to the loan's account history).

Given that RREF adduced proof sufficient to conclusively show each element of its breach of promissory note claim, we conclude based on our de novo review that RREF carried its burden to show its entitlement to summary judgment. *See Sw. Elec. Power*, 73 S.W.3d at 215; *Dorsett*, 389 S.W.3d at 613. We overrule Rogers's seventh issue.

## X. FAILED TO ADJUDICATE AFFIRMATIVE DEFENSES

 By his eighth issue, Rogers argues that RREF failed to conclusively negate his affirmative defenses. However, Rogers does not direct our attention to any rule which required RREF to achieve this task. Instead, "[i]f the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Mena v. Lenz*, 349 S.W.3d 650, 656 (Tex. App.–Corpus Christi 2011, no pet.) (op. on reh'g) (quoting *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). Rogers produced no evidence concerning his affirmative defenses, but instead devoted his only evidence to a counterclaim which is not before this Court. Accordingly, we overrule Rogers's eighth issue.

## XI. CONCLUSION

We affirm the judgment of the trial court.