**REVERSE; and Opinion Filed July 24, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00486-CV

## KYÄNI, INC., TODD THOMPSON, SCOTT BOULCH, VOLKER HARTZSCH A/K/A MARK DAVENPORT, BRANDON STEVENS, AND JAMES BRADFORD, Appellants
### V.
## HD WALZ II ENTERPRISES, INC., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-07637**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Boatright

In this accelerated appeal, Kyäni, Inc., Todd Thompson, Scott Boulch, Volker Hartzsch a/k/a Mark Davenport, Brandon Stevens, and James Bradford appeal the trial court's order denying their motion to compel arbitration. Appellants contend the trial court abused its discretion by denying their motion because appellee HD Walz II Enterprises, Inc. entered into a distributor agreement with Kyäni and, under the terms of that agreement, agreed to arbitrate all disputes. We agree with appellants, reverse the order denying the motion to compel arbitration, and order that all disputes between the parties proceed to arbitration.

### I. BACKGROUND

Kyäni manufactures health supplements and markets them throughout the United States and the world through a global sales chain of independent contractor distributors. To become a

Kyäni distributor, a prospective distributor must submit an online application through Kyäni's website and pay an application fee. A new distributor must be sponsored by an existing distributor. In addition, a new distributor is placed under an existing distributor on the organizational chart and becomes part of the existing distributor's downline. Distributors are paid based on their sales of Kyäni products; they also receive commissions and bonuses based on sales by their sponsored and downline distributors. Appellants Todd Thompson, Scott Boulch, Volker Hartzsch a/k/a Mark Davenport, Brandon Stevens, and James Bradford are independent contractor distributors for Kyäni (Distributor Defendants). Appellee HD Walz II Enterprises, Inc. (Walz) is also a Kyäni independent contractor distributor.

In June 2016, Walz filed a lawsuit against Kyäni and the Distributor Defendants, alleging claims for violations of the Texas Deceptive Trade Practices Act, tortious interference with prospective business relationships, and tortious interference with existing business relationships. Walz alleged that the Distributor Defendants developed and controlled access to a web-based networking platform known as Team Fusion to implement their own policies and procedures in violation of Kyäni's policies. Walz alleged the Distributor Defendants used access to Team Fusion to force some of Walz's sponsored or downline distributors to move to the downlines of Distributor Defendants, thus decreasing Walz's profits and increasing their own. Walz complained that the Distributor Defendants manipulated and redirected compensation earned under the Kyäni Global Compensation Plan to themselves. Walz also asserted that when he notified Kyäni of the Distributor Defendants' unfair business practices and violations of Kyäni policies, Kyäni did nothing to stop their activities.

Kyäni and the Distributor Defendants filed a motion to compel arbitration and to dismiss Walz's lawsuit. As evidence, Kyäni and the Distributor Defendants relied on the affidavit of Joshua K. Chandler, Kyäni's General Counsel. Chandler averred that Walz applied to become a

Kyäni distributor on July 17, 2014, by electronically filling out an online application whereby it agreed to Kyäni's Electronic Consent Agreement, Kyäni's Policies & Procedures, and the Kyäni Independent Distributor Agreement Terms & Conditions (collectively the Distributor Agreement). According to Chandler, the terms and conditions of the Distributor Agreement, which were attached to his affidavit, contained a binding arbitration clause.

Walz objected to Chandler's affidavit and filed a separate response in opposition to the motion to compel arbitration, arguing that Kyäni and the Distributor Defendants had not sufficiently demonstrated the existence of an agreement to arbitrate. Kyäni and the Distributor Defendants filed an amended motion to compel arbitration and to dismiss, supported by a more detailed affidavit from Chandler. After a hearing, the trial court denied their motion without stating the basis for its denial and without ruling on any of Walz's objections to Chandler's affidavit. Kyäni and the Distributor Defendants timely filed an interlocutory appeal challenging the trial court's order denying their motion to compel.

## II. DISCUSSION

In a single issue on appeal, Kyäni and the Distributor Defendants contend the trial court abused its discretion by denying their motion to compel arbitration of all claims. We review an order denying a motion to compel arbitration under an abuse of discretion standard. *Bonded Builders Home Warranty Ass'n of Tex., Inc. v. Smith*, 488 S.W.3d 468, 476 (Tex. App.—Dallas 2016, no pet.). We defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 838 (Tex. App.—Dallas 2013, no pet.). Whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

**A. Agreement to Arbitrate**

In their motion to compel arbitration, appellants stated that Walz became a Kyäni distributor on July 17, 2014, by electronically filling out an online application through the application portal on Kyäni's website. Appellants asserted that Walz, like all other Kyäni distributors, agreed to the Distributor Agreement, which provides that all disputes between Kyäni and a distributor will be resolved by binding arbitration in accordance with the Federal Arbitration Act. A party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within the agreement's scope. *Bonded Builders*, 488 S.W.3d at 476. Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Big Bass Towing*, 409 S.W.3d at 838.

In deciding whether a valid, enforceable arbitration agreement exists, we apply state contract law principles governing the formation of contracts. *Roe v. Ladymon*, 318 S.W.3d 502, 512–13 (Tex. App.—Dallas 2010, no pet.). Formation of a valid contract requires (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Thornton v. AT & T Advert., L.P.*, 390 S.W.3d 702, 705 (Tex. App.— Dallas 2012, no pet.). If the trial court finds a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Appellants contend the Chandler affidavit established the existence of a valid agreement to arbitrate between Kyäni and Walz. In his affidavit, Chandler detailed the procedure whereby an applicant becomes a Kyäni distributor. The applicant is required to submit an application through the application portal on Kyäni's website. Upon accessing the portal, the applicant is first required

–4–

to provide the identification number of the sponsoring Kyäni Distributor. The applicant then progresses through a series of screens that allow him to select products to purchase. According to Chandler, the applicant then progresses to a screen that requires the applicant to check three separate boxes designated "Check to Agree," indicating consent and agreement to the Electronic Consent Agreement, Kyäni's Policies & Procedures, and Kyäni's Independent Distributor Agreement Terms & Conditions.[1] This screen contains links to PDF versions of each agreement and the applicant may review and download the agreements. Chandler averred that if the applicant does not check the boxes confirming that he agrees to each of the agreements, he cannot move past this screen, he cannot complete the application, and he cannot become a distributor.

> Kyäni's Independent Distributor Agreement Terms & Conditions provides:
>
> Except as set forth in the Kyäni Policies and Procedures, or unless the laws of the state in which I reside expressly prohibit the consensual jurisdiction and venue provisions of this Agreement, in which case its laws shall govern, all disputes and claims relating to Kyäni, the Distributor Agreement, the Kyäni Global Compensation Plan or its products, the rights and obligations of an independent Distributor and Kyäni, or any other claims or causes of action relating to the performance of either an independent Distributor or Kyäni under the Agreement of the Kyäni Policies and Procedures shall be settled totally and finally by binding arbitration in Idaho Falls, Idaho or such other location as Kyäni prescribes, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association.

Chandler stated that once an applicant clicks on the boxes indicating agreement to the three documents, he is then asked to provide personal information such as name, birthdate, social security number or tax ID, email address, phone numbers, shipping address, and a password for the applicant's account. Once all of the requested information is provided, the applicant is allowed to move to the next screen. This screen requests the applicant's credit card information. Chandler provided true and correct copies of the described screenshots as attachments to his affidavit.

---

[1] Chandler attached true and correct copies of the current Electronic Consent, Policies & Procedures, and Terms & Conditions as Exhibits A, B, and C, respectively. He also attached true and correct copies of the agreements as they existed on the date Walz became a distributor as Exhibits D, E, and F, respectively.

Chandler averred that only after all of the previous steps were completed can the applicant progress to the next screen to review his information, finalize his order, and complete his application by clicking on the button "Create Account and Order." Kyäni's system then creates an account log containing all of the applicant's information that can be accessed through Kyäni's portal for its distributors, known as the "Back Office." Chandler averred that on July 17, 2014, Walz applied to become a Kyäni distributor by electronically completing an application through Kyäni's online application portal. Chandler stated that on the same day, Kyäni's system created an account log containing Walz's information.

Walz argued that Chandler's affidavit was not based on personal knowledge because it did not show *how* Chandler became personally familiar with the facts in his affidavit.[2] Walz cited *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371 (Tex. App.—Dallas 2011, no pet.), in support of his arguments that identification of Chandler's title was insufficient to establish the basis for Chandler's personal knowledge, and that Chandler was required to establish his connection to Walz's supposed agreements. In *Stone*, the affiant was not employed by the party for whom he offered testimony [the plaintiff] but was an officer for a company described as the exclusive advisor to the plaintiff. *Id*. at 375. This Court determined that the affidavit was insufficient because the affiant did not describe what activities or responsibilities were encompassed within his company's designation as exclusive advisor for the plaintiff, and he did not explain how his employment for a different company gave him personal knowledge of the facts to which he attested. *Id*. at 375–76. *Stone* is distinguishable from the case before us. As Kyäni's General Counsel, Chandler is not a stranger to the transactions. He is the General Counsel and the

---

[2] This Court's opinions conflict on whether lack of personal knowledge is a form objection that must be preserved or a substance objection that may be raised on appeal without a trial court ruling. *Compare Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (concluding such a complaint concerns a defect in form), *with Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 375 (Tex. App.—Dallas 2011, no pet.) (concluding such a complaint concerns a defect in substance). The result in this case is the same either way.

custodian of records for the company for which he is offering testimony, and his affidavit attests to the job duties and responsibilities that give him personal knowledge of the facts.

The identification of an affiant's position and job responsibilities can satisfy the personal knowledge requirement. *Saronikos, Inc. v. City of Dallas*, 285 S.W.3d 512, 516 (Tex. App.— Dallas 2009, no pet.). In addition to stating his job title, Chandler testified in great detail regarding the various activities and responsibilities encompassed within his role as General Counsel and how his responsibilities gave him the personal knowledge to testify regarding Kyäni's distributors, the rules, policies, procedures, terms, and conditions that pertained to Kyäni's distributors, the contracts between Kyäni and its distributors, and the application process to become a Kyäni distributor. He averred that as custodian of records for Kyäni, he is familiar with how the company created, stored, and maintained its documents and electronic records. And he stated that he has personal knowledge of the various computer programs, websites, portals, and recordkeeping software used by Kyäni to maintain its records, including documents relating to distributors. These statements are sufficient to demonstrate the manner in which Chandler became familiar with the facts at issue. *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.— Dallas 2008, no pet.) (affiant's testimony that, as Scout Executive and CEO of defendant organization, he had knowledge concerning its operation and organization was sufficient to demonstrate manner in which he became familiar with facts at issue).

Walz argued that the affidavit did not explain how Chandler or someone in his position would be familiar with the software design or recordkeeping software used by Kyäni to maintain the records at issue. However, this Court and others considering testimony about such "clickwrap" online agreements have not required that the affiant demonstrate specialized or technical knowledge of the software design of the online portal used by the company. *See Momentis U.S. Corp. v. Perissos Holdings, Inc.*, No. 05-13-01085-CV, 2014 WL 3756671, at *1 (Tex. App.—

Dallas July 30, 2014, pet. denied) (mem. op.) (director of research and compliance not required to have specialized or technological knowledge of software design to attest that the plaintiffs had electronically completed an online application and agreed to terms and policies); *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 567–68 (Tex. App.—El Paso 2016, pet. denied) (affidavit by compliance programs manager in Sears' Law Department who testified she was familiar with electronic system and software company used to manage HR records was sufficient to authenticate screenshot showing receipt and acknowledgment of arbitration agreement). Likewise, it was unnecessary for Chandler to have specialized software design knowledge to testify that Walz accessed Kyäni's online application portal, completed an online application, and became a Kyäni distributor on July 17, 2014.

Walz also asserted that the Chandler affidavit did not authenticate its attachments. Texas Rule of Evidence 901(a) provides: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). The testimony of a witness with knowledge is one way to prove authenticity. TEX. R. EVID. 901(b) (providing illustrative, non-exclusive list of ways to prove authenticity). A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as evidence. *In re Estate of Guerrero*, 465 S.W.3d 693, 704 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

Walz specifically challenged the authentication of Exhibit K. Although one of the documents attached to Chandler's affidavit is labeled Exhibit K, the affidavit does not refer to an Exhibit K, but instead refers to two different Exhibits J, one in paragraph 33 and another in paragraph 38. Walz argued that, because the Chandler affidavit did not assert that Exhibit K is a true and correct copy of any document, there is a complete lack of authentication of Exhibit K and

it should not be considered for any purpose, citing *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.).

Appellants respond that, unlike the affidavit that was inadequate in *Blanche*, the affidavit at issue here does not completely lack authentication. This affidavit, appellants argue, describes each attachment in detail. They note that paragraph 38 of the affidavit describes one of the Exhibits J as "redacted," and that the attachment labeled K contained redacted text, while the attachment labeled J did not. Appellants contend the description of the exhibit therefore confirmed that paragraph 38 verified the exhibit labeled Exhibit K. Appellants also say that the reference to Exhibit J instead of K in paragraph 38 was just a typographical error and there can be no genuine confusion or uncertainty about the identity of the document to which Chandler was referring when he incorrectly identified a second Exhibit J.

We agree. A mere typographical error in an affidavit is not a prohibited inconsistency if it does not cause confusion. *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 437 (Tex. App.—Corpus Christi 2016, no pet.). Nothing in the record indicates that Walz was confused by the reference to Exhibit J rather than K in paragraph 38 of Chandler's affidavit. Instead, the record shows that Walz understood that paragraph 38 described Exhibit K even though it referenced Exhibit J.

Consider, for example, Walz's response to appellants' amended motion to compel. There, Walz presented an argument about paragraphs 33 and 38, and Exhibits J and K. We will discuss the premises and conclusions of that argument in some detail.

Walz begins by quoting paragraph 38 of the Chandler affidavit: "'Kyani's system created an account log, a true and correct copy of which is attached hereto as Exhibit J.'" This shows that Walz knew that paragraph 38 was an attempt to authenticate an exhibit that contained an account log. Walz then observed that "'Exhibit J' appears to be a previously-referenced screenshot of

'updated' terms and conditions and does not reflect an 'account log' of Plaintiff's application." This shows that Walz knew that a previous paragraph—paragraph 33—was an attempt to authenticate an exhibit labeled "Exhibit J" that contained terms and conditions. It also shows that Walz had examined Exhibit J and was able to confirm that it did not contain an account log. Now, consider the premises of Walz's argument together, and notice the conclusion they naturally invite: (1) Walz was aware that paragraph 33 was an attempt to authenticate an exhibit containing terms and conditions, and Walz was aware that paragraph 33 was an attempt to authenticate the exhibit labeled "Exhibit J," which contained terms and conditions but not an account log, so it stands to reason that, because (2) Walz was aware that paragraph 38 was an attempt to authenticate an exhibit containing an account log, Walz would be aware that paragraph 38 was an attempt to authenticate the exhibit labeled "Exhibit K," which contained an account log but not terms and conditions.

Indeed, Walz does appear to have been aware that paragraph 38 described Exhibit K. "Assuming Defendants intended to reference Exhibit K to the Motion," Walz concluded, "this 'account log' has not been authenticated." In that conclusion, Walz did not assert that it was confused about which exhibit paragraph 38 was attempting to authenticate; Walz expressly stated that it assumed, at least for the sake of presenting its argument, that appellants meant to authenticate Exhibit K. Walz also quoted paragraph 38's description of what Exhibit K contained, an account log; this shows that Walz was aware that paragraph 38 was an attempted authentication of the account log, which was only in Exhibit K. Thus, Walz's conclusion was not based on an assertion of confusion or complete lack of authentication. It was based only on paragraph 38's mistaken reference to Exhibit J rather than K.

But the cases cited for our review indicate that there must be a complete lack of authentication, *Blanche*, 74 S.W.3d at 451, or confusion, *Rogers*, 533 S.W.3d at 437, not just a

–10–

typo, *id.*, in order for an affidavit to fail to authenticate an exhibit. It is evident from the language used in paragraphs 33 and 38, and the content of the exhibits attached to the affidavit, that paragraph 38 was an attempt to authenticate the account log in Exhibit K. It is also evident that Walz understood that this was what paragraph 38 was attempting to do.

Walz also argued that Chandler's affidavit and Exhibit K are inconsistent because Exhibit K reflects information that was input after the date the log was created. The face of Exhibit K indicates it was created on July 17, 2014, and was last modified on July 25, 2016. Walz argued that Exhibit K is not what Chandler attests it to be—a true and correct copy of the account log created for Walz on July 17, 2014. Appellants respond that it is clear from Chandler's testimony that the account log is a living document within Kyäni's system, designed to be updated throughout the Distributor relationship. We conclude that Chandler's testimony was sufficient to authenticate Exhibit K. *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet.) ("A document is considered authentic if a sponsoring witness vouches for its authenticity.").

In addition, Walz argued that Chandler's affidavit contains numerous inappropriate legal conclusions that should not be considered for any purpose. A conclusory statement is one that does not provide the underlying facts in support of the conclusion. *Riner v. Neumann*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.). The specific statements that Walz asserted are conclusory are as follows: (a) "Kyäni's relationship with Walz Enterprises is subject to the Kyäni Distributor Agreement [Affidavit ¶ 39];" (b) the Agreement "contains a binding, broad-form arbitration provision . . . that requires arbitration of any and all disputes between Kyäni and Walz [Affidavit ¶ 40];" and (c) "Walz Enterprises claims are directly related to and grow out of the Kyäni Distributor Agreement, the Kyäni Global Compensation Plan, Plaintiff's alleged rights and Kyäni's alleged defenses, and claims relating to the performance of other independent Distributors

under the Kyäni Agreement and Kyäni's Policies and Procedures [Affidavit ¶ 46]." The trial court did not rule on Walz's objection that these statements were conclusory.

Appellants do not address the statements challenged by Walz other than to note that the statements were limited and not necessary to appellants' proof regarding the existence of the arbitration provision. We reject Walz's argument that by not contesting Walz's objection to three legal conclusions in the Chandler affidavit, appellants have failed to challenge all possible grounds for the trial court's ruling, and the trial court should be affirmed on this basis alone. Appellants' failure to challenge Walz's objections to the three statements may be the basis for concluding that those portions of Chandler's affidavit are conclusory, substantively defective, and provide no evidence to prove the existence of the arbitration provision. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 884 (Tex. App.—Dallas 2007, no pet.). However, exclusion of the challenged statements does not render the entire affidavit inadmissible. *See Lopez v. Bucholz*, No. 03-15-00034-CV, 2017 WL 1315377, at \*3 (Tex. App.—Austin April 7, 2017, no pet.) (mem. op.) (trial court properly excluded two statements as conclusory but erred in striking entire affidavit as conclusory because the remaining statements were easily controvertible factual assertions and not conclusory). Here, Walz does not identify any other conclusory statements in Chandler's affidavit. The remaining fifty-three statements in Chandler's affidavit are not conclusory because they contain factual information within Chandler's personal knowledge and expertise. *Riner*, 353 S.W.3d at 321.

Chandler's testimony established that Walz agreed to the terms and conditions set forth in the Distributor Agreement, including the arbitration provision, by completing and submitting its application to become a Kyäni distributor. To the extent the trial judge concluded that there was no valid agreement to arbitrate, she abused her discretion.

**B. Scope of the Agreement**

The second element that must be shown by a party seeking to compel arbitration is that the claims in question are within the scope of the agreement to arbitrate. The parties disagree about which parties to the lawsuit (if any) are bound by the arbitration provision, whether the claims asserted in the lawsuit fall within the provision's parameters, and who can enforce the arbitration provision. Disputes about the scope of an arbitration agreement are resolved in favor of arbitration. *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc*., 442 S.W.3d 706, 715 (Tex. App.—Dallas 2014, pet. denied).

Whether the parties have agreed to submit a particular dispute to arbitration—the question of arbitrability—is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). In this case, Walz and Kyäni agreed that all disputes and claims relating to Kyäni, the Distributor Agreement, the Kyäni Global Compensation Plan, the rights and obligations of an independent Distributor and Kyäni, or any other claims or causes of action relating to the performance of either an independent Distributor or Kyäni under the Agreement or the Kyäni Policies and Procedures would be settled by binding arbitration. They also agreed that the arbitration would be conducted in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association. The arbitration provision does not expressly delegate arbitrability to the arbitrator; however, it states that arbitration shall be in accordance with the FAA and the Commercial Arbitration Rules of the AAA.

"[T]he express incorporation of rules that empower the arbitrator to determine arbitrability—such as the AAA Commercial Arbitration Rules—has been held to be clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues." *Schlumberger Tech. Corp. v. Baker Hughes Inc*., 355 S.W.3d 791, 802 (Tex. App.—Houston [1st

Dist.] 2011, no pet.). When the parties agree to a broad arbitration clause, purporting to cover all claims, disputes and other matters arising out of or relating to the contract, and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 230 (Tex. App.—Dallas 2010, pet. denied). We conclude that the arbitration provision evidences a clear and unmistakable intention that the arbitrators have the authority to determine the scope of arbitration with respect to Walz's claims against Kyäni.

Walz contends that because the Defendant Distributors are not parties to its purported Distributor Agreement with Kyäni, Walz is not required to arbitrate its disputes with the Defendant Distributors. Generally, a party must sign an arbitration agreement before being bound by it. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). However, the Texas Supreme Court has recognized that direct-benefits estoppel may permit a non-signatory to compel a signatory's claims to arbitration "if liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding); *see also In re Trammell*, 246 S.W.3d 815, 821 (Tex. App.—Dallas 2008, orig. proceeding) (direct-benefits estoppel applies when signatory's claim against non-signatory "references or presumes the existence of the written agreement" containing an arbitration clause). Liability arises from the contract if the signatory plaintiff's right to recover and its damages depend on the existence of the contract containing the arbitration clause. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006). The equitable theory of direct-benefits estoppel precludes a signatory claimant from having it "both ways" by "seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *VSR Fin. Servs., Inc. v. McLendon*, 409

S.W.3d 817, 831 (Tex. App.—Dallas 2013, no pet.) (quoting *In re James E. Bashaw & Co*., 305 S.W.3d 44, 54 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding)). While the boundaries of direct-benefits estoppel are not always clear, the signatory generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law. *In re Vesta Ins. Grp., Inc*., 192 S.W.3d 759, 761 (Tex. 2006) (per curiam). Tortious interference claims do not fall comfortably within either category. *Id*.

Walz contends that its tortious interference claims against the Distributor Defendants arise from general obligations imposed by law and not from any obligations existing between Walz and Kyäni or as set forth in the Distributor Agreement. The obligation not to interfere with an existing contract is a general obligation imposed by law; it is not imposed on the parties to that contract because a party cannot interfere tortiously with its own contract. *Id*. Thus a signatory generally is not "required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause." *Id*. at 763. But if the signatory plaintiff's right to recover and its damages depend on the existence of the contract containing the arbitration clause, the plaintiff can be compelled to arbitrate its claim. *Meyer*, 211 S.W.3d at 306–07.

Appellants argue that Walz can be compelled to arbitrate its claims against the Distributor Defendants because Walz relied on the existence of the Distributor Agreement in asserting its claims against the Distributor Defendants. In its petition, Walz alleged that the Distributor Defendants tortiously interfered with its prospective and existing business relationships as a Kyäni distributor by violating the policies and procedures set forth in the Distributor Agreement. Walz alleged that the Distributor Defendants implemented their own policies and procedures inapposite to the Kyäni policies and procedures relied upon by Walz when joining the Kyäni organization. Walz claimed that the Distributor Defendants violated Kyäni policies and procedures by forcing some of Walz's sponsored or downline distributors to move to the downlines of Distributor

–15–

Defendants, thus decreasing Walz's profits and increasing their own. Walz accused the Distributor Defendants of manipulating the genealogy of Kyäni distributors and redirecting compensation earned under the Kyäni Global Compensation Plan for their own financial gain. Walz complained that the Distributor Defendants violated Kyäni policies by routinely publishing misleading statements regarding sales numbers and income. Walz also asserted that when he notified Kyäni of the Distributor Defendants' unfair business practices and violations of Kyäni policies, Kyäni did nothing to stop their activities. Walz's complaints of tortious interference with a prospective and an existing business relationship are based on his allegations that the Distributor Defendants violated Kyäni policies and procedures. Therefore, Walz's claims not only make reference to or presume the existence of the Distributor Agreement, but also rely on it for viability. *Meyer*, 211 S.W.3d at 306. Accordingly, the Distributor Defendants are entitled to invoke the arbitration provision in the Distributor Agreement and Walz is estopped, through direct-benefits estoppel, from refusing to arbitrate its claims against the Distributor Defendants.

## C. Defenses to Arbitration

Once the party seeking to compel arbitration has established that a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement, the burden shifts to the party opposing arbitration to present a valid defense to the agreement. *J.M. Davidson*, 128 S.W.3d at 227; *Seven Hills*, 442 S.W.3d at 715. Walz raised several defensive theories. It argued that the unsigned Distributor Agreement was unenforceable because Kyäni failed to prove that the parties agreed to arbitrate and that only Walz could have checked the boxes to agree to the Distributor Agreement. The arbitration agreement committed these issues to the arbitrator.

Walz also argued that there was no evidence that Walz agreed to arbitrate its disputes with the Distributor Defendants. However, Walz failed to present any affidavits or other such admissible evidence to support its defensive theories in an effort to escape arbitration. "In the

absence of evidence of a valid defense, the trial court has no discretion—it must compel arbitration and stay its own proceedings." *Seven Hills*, 442 S.W.3d at 715. We conclude the trial court erred by denying the motion to compel arbitration of Walz's claims.

## CONCLUSION

We reverse the trial court's order denying arbitration, and order that all disputes between the parties proceed to arbitration.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

170486F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KYÄNI, INC., TODD THOMPSON,
SCOTT BOULCH, VOLKER HARTZSCH
A/K/A MARK DAVENPORT,
BRANDON STEVENS, AND JAMES
BRADFORD, Appellants

No. 05-17-00486-CV     V.

HD WALZ II ENTERPRISES, INC.,
Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-07637.
Opinion delivered by Justice Boatright.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellants' motion to compel arbitration is **REVERSED**. We **ORDER** that all disputes between the parties proceed to arbitration.

It is **ORDERED** that appellants KYÄNI, INC., TODD THOMPSON, SCOTT BOULCH, VOLKER HARTZSCH A/K/A MARK DAVENPORT, BRANDON STEVENS, and JAMES BRADFORD recover their costs of this appeal from appellee HD WALZ II ENTERPRISES, INC.

Judgment entered this 24th day of July, 2018.