

# NUMBER 13-22-00452-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHILDREN'S LIGHTHOUSE, SPRING,**                               **Appellant,**

**v.**

**AMY DAVISON AND TORRI DAVISON,**                               **Appellees.**

---

### On appeal from the 284th District Court
### of Montgomery County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellant Children's Lighthouse, Spring (CLHS) challenges the trial court's dismissal of a business disparagement lawsuit it brought against appellees Amy and Torri Davison. CLHS argues by two issues that the court erred by: (1) determining that the Texas Citizens Participation Act (TCPA) applies to its suit, and (2) excluding certain

evidence in determining whether to dismiss the suit pursuant to the TCPA. We affirm.[1]

## I.    BACKGROUND

CLHS is a children's daycare facility located in Spring, Texas. On May 6, 2022, CLHS filed suit against the Davisons alleging that they made false accusations of abuse and mistreatment by CLHS staff against their child. The petition stated that the Davisons made the allegedly disparaging comments in an email to the facility's director, in social media posts, and in a television interview. According to the petition, the Davisons' comments directly caused a drop in enrollment and caused CLHS to lose revenue. CLHS sought actual and exemplary damages and attorney's fees.

The Davisons filed a motion to dismiss under the TCPA on July 11, 2022. On August 19, 2022, CLHS filed a motion for leave to file a response to the TCPA motion along with the proposed response itself, which was accompanied by various evidentiary exhibits. The Davisons then filed an objection to CLHS's motion for leave, as well as objections to the evidence attached to CLHS's response. After a hearing on August 26, 2022, the trial court signed an order: (1) overruling the Davisons' objection to CLHS's motion for leave to file a late response, (2) sustaining at least one objection as to each of CLHS's exhibits, (3) dismissing CLHS's suit, and (4) denying the Davisons' request for attorney's fees. This appeal followed.

## II.    DISCUSSION

### A.    Applicable Law and Standard of Review

The TCPA is intended to "protect[] citizens from retaliatory lawsuits that seek to

---

[1] This appeal was transferred from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). A party seeking dismissal under the TCPA has the initial burden to demonstrate that the "legal action is based on or is in response to . . . the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1). If the defendant meets this initial burden, then the plaintiff must establish by "clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal. *Id.* § 27.005(c). Even if the plaintiff makes this showing, the trial court must nevertheless dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the [defendant] is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Our review of a ruling on a TCPA motion to dismiss is de novo. *Entravision Commc'ns Corp. v. Salinas*, 487 S.W.3d 276, 281 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied).

## B.    TCPA Applicability

By its first issue, CLHS argues that the Davisons did not meet their burden to obtain dismissal under the TCPA. In particular, it complains that the Davisons "offered no pleadings of their own, no affidavits or verifications, and no evidence allowable under a [Texas Rule of Civil Procedure] 166a standard to meet their burden . . . in proving that the cause was based on protected speech."

Both parties cite case law stating that a movant for dismissal under the TCPA must establish by "a preponderance of the evidence" that the claim at issue falls within the TCPA's purview. *See Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 328 (Tex. App.—Texarkana 2021, no pet.) ("Under the first step, '[t]he party moving for dismissal

has the initial burden to establish by a preponderance of the evidence "that the legal action is based on . . . or is in response to the party's exercise of" the right of free speech, the right to petition, or the right of association.'"); *see also Martin v. Hutchison*, No. 06-19-00093-CV, 2020 WL 6788243, at *4 (Tex. App.—Texarkana Nov. 19, 2020, pet. denied) (mem. op.) (same) (citing *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 939 (Tex. App.—Tyler 2019, pet. denied)). However, those cases relied on an earlier version of TCPA § 27.005(b) which is not applicable to this case. *See Howard*, 628 S.W.3d at 328; *see also Martin*, 2020 WL 6788243, at *4. In 2019, the statute was amended to remove the "preponderance of the evidence" language. *See* Act of May 20, 2019, 86th Leg., R.S., ch. 378, § 3 2019 TEX. GEN. LAWS 684.

The amended version of § 27.005(b), which is applicable to this case, provides that the movant's initial burden is merely to "demonstrate[]" that the claim at issue is based on an exercise of one of the enumerated constitutional rights. *See id.* §§ 11, 12 (stating that the amended statute applies to all suits filed on or after September 1, 2019); TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). And, in determining whether a legal action is "subject to or should be dismissed under" the TCPA, a trial court is directed to "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). Accordingly, it was not necessary for the Davisons to produce admissible evidence or verified pleadings in order to satisfy their initial burden. Instead, the court was permitted to consider the unverified pleadings in determining whether the TCPA applies. *See id.*

As noted, the Davisons alleged in their motion that CLHS's suit is based on their

exercise of the rights of free speech and of association. The statute defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern"; while "exercise of the right of association" is defined as "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2), (3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" is defined as

> a statement or activity regarding:
>
> (A)    a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
>
> (B)    a matter of political, social, or other interest to the community; or
>
> (C)    a subject of concern to the public.

*Id.* § 27.001(7).

CLHS's petition alleged in part that Amy Davison reported bruising on her child's back to CLHS management on October 27, 2020, and in response, CLHS "self-reported" the allegation to the Department of Family and Protective Services (the Department). According to the petition, Davison later informed CLHS that the bruising had actually been caused by a toy that was left in the child's car seat; CLHS relayed that information to the Department and the Department closed its investigation. The petition further alleged that video surveillance recordings from the daycare facility showed that the toy was still in the child's car seat on November 6 and 10, 2020. According to CLHS, Davison sent an email to CLHS's director on November 11, 2020, accusing a staff member of causing new bruises on the child. In the email, Davison also accused a CLHS staff member of forcefully

5

moving the child to a changing table and grabbing the child by his arm. Davison then filed a report with police. According to the petition, neither the Montgomery County Sheriff's Department or the Department found any wrongdoing, and the Montgomery County District Attorney did not file any charges. However, the staff member involved was required to attend a training session on infant care.

According to CLHS's petition, in February 2021, Amy Davison posted messages on social media repeating the allegations against the CLHS staff member. CLHS further claimed that both Davisons made "several false statements" in an interview on a local television news program on May 13, 2021, including: (1) that the staff member "mishandled" and "abused" the child; (2) that the staff member "swung" the child around and "tossed him in the air"; and (3) that in November, the child had additional bruises similar to the ones he had on his back in October.

CLHS's petition complains of at least five statements by the Davisons which are "communications" under the TCPA: (1) Amy's October 27, 2020 report of bruising to CLHS management; (2) her November 11, 2020 email to CLHS's director, reporting bruising and other physical mistreatment of the child; (3) her report of abuse to the Montgomery County Sheriff's Department; (4) her social media posts; and (5) the Davisons' May 13, 2021 television interview. These communications were each "made in connection with" the Davisons' efforts to report and publicize what they believed to be mistreatment of their child occurring at CLHS's facility. CLHS does not dispute that the issue of child abuse, even if allegedly committed in a privately-owned facility, is a matter of public concern. *See id*.; *de la Torre v. de la Torre*, 613 S.W.3d 307, 312 (Tex. App.—Austin 2020, no pet.) (concluding that statements involving "the welfare of a child and

6

allegations of child abuse" are matters of public concern); *Cunningham v. Waymire*, 612 S.W.3d 47, 58 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (same where defendant made statements regarding potential abuse of his grandson); *Backes v. Misko*, 486 S.W.3d 7, 18 (Tex. App.—Dallas 2015, pet. denied) (same where defendant's statement "indicated a child was suffering abuse from a parent")[2]; *see also Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994) ("The public has a strong interest in protecting children, especially protecting them against physical and sexual abuse."); *Klentzman v. Brady*, 456 S.W.3d 239, 258 (Tex. App.—Houston [1st Dist.] 2014) (noting that "[c]ourts have routinely held that matters related to the reporting of crimes and related proceedings are matters of public concern"), *aff'd*, 515 S.W.3d 878 (Tex. 2017).

CLHS concedes that its petition "refer[s] to [the Davisons'] defamatory statements to harm their business," but it claims that it did not "admit or imply that the statements were made for a protected purpose." That may be true, but such an admission or implication is not required for a claim to be encompassed by the very broad definitions supplied by the TCPA.

We conclude that CLHS's claim "is based on or is in response to" communications "made in connection with" "a subject of concern to the public." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (3), (7). Accordingly, the Davisons demonstrated that the suit implicates their exercise of the right of free speech, and the TCPA applies. *See id.* § 27.005(b)(1)(A). We overrule CLHS's first issue.

---

[2] *De la Torre*, *Cunningham*, and *Backes* each applied an earlier version of the TCPA which defined "matter of public concern" to include "an issue related to . . . health or safety . . . or community well-being . . . ." *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019). Those specific examples are not included in the current version of the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). Nevertheless, we conclude that an allegation of child abuse at a private daycare facility is a "matter of public concern" under the current definition as well.

**C.    Evidentiary Objections**

By its second issue, CLHS argues that the trial court erred in sustaining the Davisons' objections to the exhibits attached to its response to the motion to dismiss. It asks us to remand the case to allow the trial court to consider those exhibits in determining whether the cause should be dismissed under the TCPA.[3]

Because the TCPA applies to CLHS's suit, it had the burden to produce evidence supporting a prima facie case for each essential element of its claim in order to avoid dismissal. *See id.* § 27.005(c). Such evidence must be "evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure" or "supporting and opposing affidavits stating the facts" on which the claim is based. *Id.* § 27.006(a). Pleadings will not suffice to satisfy this burden. *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 28 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that "allegations in a petition are not alone sufficient" to meet a claimant's burden under § 27.005(c)); *see Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971) ("Pleadings simply outline the issues; they are not evidence, even for summary judgment purposes.").

We review a trial court's evidentiary rulings on appeal for abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex.

---

[3] In its brief on appeal, CLHS claims "[t]he [e]xhibits were absolute evidence required by law to prove clear and convincing evidence under a TCPA Motion to Dismiss, and [CLHS] did not have a fair chance to prove step two of the TCPA." On March 10, 2023, we requested supplemental briefing addressing "whether the evidence excluded by the trial court, if considered, would have satisfied appellant's burden under the [TCPA] to establish 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" CLHS filed a supplemental brief in accordance with our request, and the Davisons filed a responsive supplemental brief.

2011) (plurality op.).

**1.  The Evidence**

CLHS's response included a declaration by Savio Saldanha which stated in relevant part:

2.  . . . I declare under penalty of perjury that the foregoing is true and correct.

3.  I have personal knowledge in this cause, have read the Response to the Motion to Dismiss, and confirm that Exhibits 1–13 [sic] are true and correct copies of what they claim to be, and the exhibits apply to the Response as they purport.

4.  I am the operating partner of [CLHS], and am aware and have personal knowledge of all facts stated in the Response.

5.  The response is true and correct and the facts stated within are as they are described.

6.  CLHS was aware of the complaint made by Amy Davidson [sic] of bruises in October of 2020. It was expressed to the school by Amy Davison that she believed a toy was responsible for the bruising.

7.  CHLS has pictures of the yellow, four prong toy in the car seat.

8.  There is [sic] also pictures November 6th and November 10th from the breakroom at CLHS that show the toy in the car seat belonging to Amy Davison and used by her child in question. We were told by the parent that removing it would be hard because it was the child's favorite toy.

9.  The accusations in Amy Davison's letter to the school after the alleged incident never happened. The teacher denied the aggressive handling or yanking the student. Further, the teacher stated that the child was picked up with one arm, but close to the underarm. The teacher denied throwing the student or the student being swung in any fashion.

10.  CLHS alerted [the Department] immediately. [The Department] sent an investigator and cleared CLHS of any deficiencies.

11.  We were aware that the authorities were contacted by [the Davisons]. No charges were filed and we understand the investigation to be over.

. . . .

13. CLHS keeps detailed records of enrollment.

14. The summer enrollment season is a large enrollment period for our daycare.

15. Our records indicate that the school saw approximately 30% decrease from summer 2020 to summer 2021.

16. The school has still struggled to recover after summer of 2021 and has been damaged monetarily by $300,000 to $500,000 since summer 2021.

17. Several parents have made it very clear that the public and other parents seeking a daycare are aware of the [television] interview, as it is one of the top internet searches when looking up the daycare, and those who have searched have specifically expressed that the article is the only reason they did not enroll.

18. This damage continues as the article is still online, and CLHS continues to receive damages ongoing.

19. The article and Facebook post were and are still seen by third parties, damaging the daycare[']s reputation both in the past and ongoing.

Eleven enumerated exhibits were attached to Saldanha's declaration: (1) an email chain between CLHS's director and a Department representative on October 29, 2020; (2) a photograph of a toy in a car seat; (3) screenshots from a surveillance video allegedly showing the toy in the car seat at CLHS's facility; (4) Amy Davison's November 11, 2020 email to CLHS's director containing a "recap" of her allegations; (5) a December 23, 2020 letter from the Department to CLHS's director explaining that "abuse of a child was ruled out"; (6) social media posts by Amy Davison alleging that the child was "physically abused in October at [CLHS]"; (7) a February 6, 2021 email from Saldanha to Davison thanking her for "removing the post"; (8) a July 1, 2022 demand letter from the Davisons' attorney to CLHS's insurer offering to release the Davisons' claims against CLHS for $150,000; (9) a January 14, 2021 email from the Department to CLHS stating that the allegedly

10

abusive staff member may return to work; (10) a printout of an online news article based on the Davisons' television interview; and (11) a video recording of the interview.[4]

The Davisons filed various objections to CLHS's exhibits. In its final judgment, the trial court sustained the Davisons' objections to all eleven exhibits on the basis of lack of authentication. Additionally, the trial court sustained hearsay objections to exhibits 1, 5, 6, 7,[5] and 9, and a relevance objection to exhibit 7. We address the objections in turn.

## 2. Authentication

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a); *see* TEX. R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018) (per curiam) ("The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (providing that, in evaluating a TCPA motion to dismiss, the court may consider evidence which would be admissible under the summary judgment rule). This requirement may be satisfied with testimony, by a witness with knowledge, that "an item is what it is claimed to be." TEX. R. EVID. 901(b)(1).

CLHS relied on the declaration of Saldanha, its operating partner, in order to authenticate its exhibits. Saldanha stated in the declaration that he had "personal

---

[4] Exhibit 11 is not included in the appellate record.

[5] The hearsay objections to exhibits 6 and 7 were sustained only as to posts and emails which were not sent by Amy Davison.

knowledge in this case" and that the exhibits "are true and correct copies of what they claim to be."[6] On appeal, the Davisons argue that, out of all the exhibits offered by CLHS, only exhibit 7 "contained an email involving [Saldanha]." The Davisons concede that Saldanha stated the exhibits "are true and correct copies of what they claim to be," but they argue that "[s]uch a statement is not legally sufficient" to authenticate the exhibits.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* But the mere recitation that an affidavit is based on personal knowledge is inadequate; instead, the affidavit must "disclose the basis on which the affiant has personal knowledge of the facts asserted." *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 428 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex. 1988) (per curiam) (finding affidavit failed to meet the requirements of Rule 166a because it "fail[ed] to show how [the affiant] became familiar with the facts in the affidavit"). Statements made in the affidavit "need factual specificity such as place, time, and [the] exact nature of the alleged facts." *Valenzuela v. State & Cnty. Mut. Fire Ins.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.

---

[6] Saldanha's declaration was not sworn to before an officer authorized to administer oaths. *See* TEX. GOV'T CODE ANN. § 312.011(1) ("'Affidavit' means a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."); *Heirs of Del Real v. Eason*, 374 S.W.3d 483, 488 (Tex. App.—Eastland 2012, no pet.) (noting that "unauthenticated or unsworn documents do not constitute competent summary judgment evidence"). The Davisons did not object to the declaration on this basis, nor did they argue that Saldanha's attempted authentication of the exhibits was ineffective for this reason.

12

1984)). "We look to the entire affidavit to determine whether the facts asserted therein are based on personal knowledge." *Rogers*, 533 S.W.3d at 428.

"A person's position or job responsibilities can peculiarly qualify him to have personal knowledge of facts and establish how he learned of the facts." *Southtex 66 Pipeline Co.*, 238 S.W.3d at 543. In his declaration, Saldanha stated he was CLHS's "operating partner," but he did not give any indication of what his job responsibilities were in that capacity. In fact, there is nothing in Saldanha's declaration, other than the mere recitation of his job title, establishing the basis for his personal knowledge as to the authenticity of any of the exhibits. Nevertheless, it is reasonable to assume that an "operating partner" of a company would have direct access to correspondence sent to and from the company and would have personal knowledge regarding whether copies of that correspondence are authentic.[7] Accordingly, we find that Saldanha's bare assertion of personal knowledge, combined with his status as operating partner of CLHS, was sufficient to authenticate exhibits 1, 4, 5, 7, 8, and 9, which consist entirely of documents and emails sent to and from CLHS representatives. However, there is nothing in Saldanha's declaration establishing the basis for his personal knowledge as to exhibits 2, 3, 6, 10, and 11. We conclude the trial court did not abuse its discretion in finding that Saldanha's declaration was insufficient to authenticate those exhibits.

### 3. Hearsay

The Davisons also objected to exhibits 1, 5, 7, and 9 on hearsay grounds. "Hearsay" is a written or oral statement that "the declarant does not make while testifying

---

[7] It is also reasonable to assume that a person would have personal knowledge regarding the authenticity of emails which are sent by that person or specifically addressed to that person.

at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). Hearsay is not generally admissible except as provided by statute or rule. TEX. R. EVID. 802. "The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Exhibit 1 is an email chain between CLHS's director and the Department on October 28 and 29, 2020. In one email, CLHS's director advised the Department that Amy Davison

> came in this morning with this toy found in the car seat.[8] She now believes that this may have been what caused the bruising as she measured the toy against the bruises on the back and they match up. In addition, when I spoke with her last evening she said that as she was giving his bath last night that he is beginning to raise his head and when he let it fall back it hit the same place that the bruising is on the back of his head.

The email chain also contains: (1) an email from CLHS's director to the Department explaining that CLHS "made an online report" regarding Amy Davison's allegation of abuse; and (2) an email from the Department to CLHS's director acknowledging receipt of the online report and stating: "We have reviewed the information and determined it does not appear to involve a substantial risk of abuse or neglect in which [the Department] has the authority to investigate."

In its brief on appeal, CLHS argues that this exhibit should not have been excluded on hearsay grounds because it "went to show that the alleged injuries claimed by [Amy Davison] were investigated by [the Department] and [CLHS] was not found deficient, not

---

[8] Exhibit 2 is a photograph of a toy in a car seat, but as noted, Saldanha's declaration was insufficient to authenticate that exhibit.

14

that [the Davisons] were liable for disparagement." But the Department's determination that CLHS's report "does not appear to involve a substantial risk of abuse or neglect" comprises only part of the exhibit. Moreover, as CLHS concedes, that particular part of the exhibit was offered to prove that "[CLHS] was not found deficient"; i.e., it was offered to prove the truth of the matter asserted in the statement. *See* Tex. R. Evid. 801(c) ("'Matter asserted' means: (1) any matter a declarant explicitly asserts; and (2) any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief about the matter.").[9] The trial court did not abuse its discretion in sustaining the Davisons' hearsay objection to this exhibit.

Exhibit 5 is a letter from the Department to CLHS's director, dated December 23, 2020, stating that CLHS was recently investigated due to allegations that "a child was injured by a caregiver while in care" and that, after "an investigation conducted by a [Department] investigator, abuse of a child was ruled out." CLHS does not address the hearsay objection to this exhibit in its brief. *See* Tex. R. App. P. 38.1(i). We conclude that, because the exhibit was offered to prove the truth of the matter asserted therein, the trial court did not abuse its discretion in excluding this exhibit on hearsay grounds.

Exhibit 7 consists of a chain of emails between Saldanha and Amy Davison dated February 6, 2021. In one email, Saldanha asked Davison to take down a Facebook post which "maligns our school" and threatened to pursue "legal options" if she did not. In another email, Saldanha thanks Davison for "taking action immediately and removing the

---

[9] At the hearing on the motion to dismiss, there was some discussion as to whether the exception to hearsay for "record[s] kept in the course of a regularly conducted business activity" applies to the exhibits. *See* Tex. R. Evid. 803(6). However, there was no evidence that the exhibits were "kept in the course of a regularly conducted business activity" or that making the record was a regular practice of that activity." *See id.* Accordingly, the trial court did not abuse its discretion by failing to find that this exception applies. We note that CLHS does not argue on appeal that this exception applies.

post." Again, CLHS does not address the hearsay objection to this exhibit in its brief.[10] *See* TEX. R. APP. P. 38.1(i). We conclude the trial court did not abuse its discretion in sustaining the hearsay objection to this exhibit.

Finally, exhibit 9 is another email exchange between CLHS's director and the Department representative. CLHS's director asked whether the staff member involved in the Davisons' accusations is "able to return to working with all age groups and alone." The Department representative replied: "Yes, but I would do training with her and other staff about proper ways to pick up children. And remind them that parents are always watching." CLHS argues on appeal that this exhibit "was used for [i]ndependent [s]ignificance and the backdrop of [the Department's] investigation, not to prove liability." However, CLHS does not dispute that this exhibit was offered to prove the truth of the matter asserted—i.e., that the Department conducted an investigation into the staff member's actions and allowed her to return to work with all age groups. *See* TEX. R. EVID. 801(c). We conclude the trial court did not abuse its discretion in sustaining the hearsay objection to this exhibit.[11]

### 4.    Harm

As noted above, the trial court abused its discretion by sustaining authentication objections to exhibits 4 and 8. Because lack of authentication was the only objection raised as to these exhibits, they should have been considered by the trial court in

---

[10] CLHS does argue that this exhibit was relevant because "[a]greeing to retract goes to damages." We do not reach the relevance issue because the hearsay objection was properly sustained.

[11] CLHS did not argue at trial, and does not argue on appeal, that any of the exhibits are admissible under the exception to hearsay for public records. *See* TEX. R. EVID. 803(8)(A)(iii) (providing that in a civil case, a "record or statement of a public office" is admissible notwithstanding the rule against hearsay if it "sets out . . . factual findings from a legally authorized investigation"). Accordingly, CLHS has not met its burden to establish an exception to the hearsay rule in this regard. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

determining whether CLHS met its burden under the TCPA to show "clear and specific" evidence supporting each essential element of its prima facie case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). In its supplemental brief, CLHS argues that the excluded evidence was sufficient to serve that purpose. *See* TEX. R. APP. P. 44.1(a) (providing that, for error in a civil case to be reversible, it must have: "(1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals").

A "prima facie case," as used in the TCPA, means "evidence that is legally sufficient to establish a claim as factually true if it is not countered." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). It represents the "minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Schimmel v. McGregor*, 438 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In the context of the TCPA, "clear" has been interpreted to mean "unambiguous," "sure," or "free from doubt," while "specific" has been interpreted to mean "explicit" or "relating to a particular named thing." *In re Lipsky*, 460 S.W.3d at 590. The standard requires "element-by-element, claim-by-claim exactitude." *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 206 (Tex. App.—Austin 2017, pet. dism'd). We review the evidence in the light most favorable to the plaintiff. *Schimmel*, 438 S.W.3d at 855–56.

CLHS's only claim against the Davisons is for business disparagement. "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences,*

17

*Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *see Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (noting that these elements "are more stringent than those of defamation because business disparagement protects against pecuniary loss"). In this context, a showing of "malice" "requires proof that the defendant made a statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'" *Forbes Inc.*, 124 S.W.3d at 171 (quoting *Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 420 (Tex. 2000)).

Here, exhibit 4 includes an email from Amy Davison "recap[ping]" the accusations against CLHS. Davison conceded that "a toy may have been left in [the child's] car seat" and that "'could' have caused the bruises" on the child; however, she went on to explain that, according to her observation of surveillance video, CLHS staff continued to act "aggressive[ly]" toward the child. She said that, at one point, she saw a staff member "sw[i]ng [the child] around by his arm like a rag doll." Exhibit 8, a demand letter from the Davisons' counsel to CLHS, alleges that the Davisons suffered damages as a result of CLHS's negligence—it does not constitute clear and specific evidence supporting any element of a business disparagement claim against the Davisons.

Saldanha stated in his declaration that the incidents described by Amy Davison "never happened." However, there is no admissible evidence in the record—clear and specific or otherwise—tending to establish that Davison made her allegedly disparaging statements with knowledge that they were false or with reckless disregard as to their falsity. *See id.* Accordingly, the trial court's error in sustaining the Davisons' objections to exhibits 4 and 8 did not cause the rendition of an improper judgment, nor did it prevent CLHS from properly presenting the case on appeal. *See* TEX. R. APP. P. 44.1(a). CLHS's

18

second issue is overruled for that reason.

### III.    Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
6th day of July, 2023.